[Civ. No. 13576.   First Dist., Div. Two.   Apr. 26, 1948.]

JOE MILANI et al., Respondents, v. JACK SMITH, Appellant.

Lawrence A. Cowen for Appellant.

Phillip A. Kennedy and Leonard J. Bloom for Respondents.

GOODELL, J.—The defendant appeals from an order granting a preliminary injunction and from a judgment and decree containing a permanent injunction in a suit brought to stop unfair competition.

The plaintiff, Joe Milani, entered the taxicab business in San Rafael in 1925. In 1933, he took over a business in that city known as Yellow Cab Company. Later on his son Frank joined him as a partner. They operate six cabs, five of which are painted yellow, with black fenders, and lettered "Yellow Cab." Their office is painted yellow and lettered "Yellow Cab." The use of that name in connection with their business dates back to 1935; their cabs have been yellow since 1942, and the drivers have worn yellow caps since 1943.

The defendant entered the taxicab business in San Rafael in 1942, first calling it Blue Line, next Checker Blue Line, then Checker Cab Company, and finally Yellow Checker Cab Company. His cabs at first were painted in colors other than yellow, but in August, 1946, he had all six of them painted a shade of yellow approximately the same as plaintiffs' fleet, but with red fenders. At the same time he changed the color of his drivers' caps from black to yellow. The defendant's office, painted yellow and red and lettered "Yellow Checker Cab," is about 75 feet from plaintiffs' place on the same street.

After two hearings the preliminary injunction was issued enjoining defendant, "from using the word 'Yellow,' orally, in writing, or otherwise, and in any manner whatsoever to identify the operation of his taxicab business . . ." and "from using the color yellow on his taxicabs, offices and stands, drivers caps and uniforms, signs, and all other equipment, used in his taxicab business in . . . San Rafael . . ."

At the trial all evidence admitted at the earlier hearings went in by stipulation and immediately after submission the court ordered judgment for plaintiff for one dollar damages and a permanent injunction. Findings were filed and a decree entered, enjoining the defendant "from using the word 'yellow' orally, in writing, in advertising, or otherwise, or in any manner whatsoever to identify the operation of any taxi-

cab business owned or operated . . . by the defendant . . .''
and ''from using the color 'yellow' on defendant's taxicabs,
offices and stands, driver's caps and uniforms, signs, and all
other equipment used . . . in any taxicab business owned or
operated . . . by defendant . . . in . . . San Rafael . . . in
such a manner as may be calculated or liable to deceive the
public generally, or to lead members thereof, while exercising
ordinary care and prudence in selecting a taxicab, to believe
that the taxicab operated by the defendant is a taxicab belong-
ing to or operated by the plaintiffs, . . .''

The preliminary injunction gave the defendant 13 days
within which to comply but did not specify how he should do
so. After its issuance and before the trial the defendant al-
tered the appearance of his taxicabs. A colored photograph
shows that the yellow paint was left on the lower part of the
cabs' bodies (below the windows) but that black checkers had
been painted over the yellow background, resulting in a
yellow-and-black checker combination. The upper parts and
tops of the bodies are a cream buff color. The fenders re-
mained red. The same photograph shows that the word ''Yel-
low'' on the front of defendant's office, which had appeared
above ''Checker'' and above ''Taxi,'' had been erased, and
that two panels, above the lettering, and other spots on the
front, had been painted with a checker pattern. In announc-
ing his decision the judge remarked: ''I see no reason for
changing the ruling of the Court on the action of the tem-
porary injunction. I must say that the view I have had of
the cabs since they have been recheckered and the view pre-
sented in court convinces me if that condition is continued
there would be no likelihood of deception for anybody. I think
the defendant has fully complied with the ideas of the Court,
and anybody who claims to be deceived now, even a child
would know the difference.'' Thereupon plaintiffs' counsel
admitted that ''we too are satisfied with the present color
scheme in that it is not competitive.''

The evidence, which is practically without conflict, presents
a typical case of unfair business competition, squarely within
the doctrine of *Weinstock, Lubin & Co.* v. *Marks,* 109 Cal.
529 [42 P. 142, 50 Am.St.Rep. 57, 30 L.R.A. 182]. In that
case the plaintiffs had used ''Mechanics' Store'' as their trade
name. The defendant, next door, called his store ''Mechanical
Store.'' The court restrained the use of the latter name and
required that the defendant should distinguish his place of

business from that of the plaintiff "in some mode or form that shall be a sufficient indication to the public that it is a different place of business from that of the plaintiff." In the present case the plaintiffs were entitled under that rule to have such alterations made as would enable the public to distinguish the cabs of the two competitors and the "recheckering" accomplished that result and eliminated the probability of future deception.

The defendant's principal contention is that the preliminary injunction went too far and was too broad in flatly prohibiting the use of the word "Yellow" and the color yellow, without any qualifying language. The same attack is made on the permanent injunction insofar as it prohibits the use of the word "Yellow." In that connection defendant argues that he "had a broad right to use the word yellow and the color yellow in his business. That broad right" he says, "could be narrowed only in the event he exercised it to pirate the business of the plaintiffs and only to the extent necessary to curb the pirating." The injunctions specify the several methods of operation in and by which the word and color shall not be used. It is not at all apparent how either the word or the color could possibly be used in such specified ways e. g., in advertising, or on cabs, stands or signs without unfair competition resulting, and the defendant does not suggest how he thinks it could be done. "Yellow" in this case is the same as "Mechanical Store" was in the Weinstock, Lubin case, where its use was flatly and unqualifiedly enjoined. In *Eastern Columbia, Inc.* v. *Waldman,* 30 Cal.2d 268 [181 P.2d 865], the trial court enjoined the use of "Western Columbia" with qualifying language added. On an appeal by plaintiff the Supreme Court struck out the qualifying words, saying, "An absolute injunction is proper where defendant's conduct is unlawful."

As to color, defendant says the preliminary injunction "required appellant to repaint his entire business equipment with a color or colors other than yellow, and to eradicate from his business every vestige of the color yellow." As we have already seen, on a broad surface of the cabs the yellow was not eradicated; it was "checkered" over the yellow background, leaving a yellow-and-black checker effect. This put far less burden on the defendant than literal compliance would have done, and of this he cannot complain. This process of "recheckering" was a departure, with judicial sanction, from the literal requirements of the preliminary injunction,

amounting to a practical modification of it. When, several weeks later, the permanent injunction issued, the court therein restrained the use of yellow "in such a manner as may be calculated or liable to deceive the public . . ." This qualification was presumably added in the light of the alterations already made, and the defendant admits that that part of the decree is not subject to criticism. ■ The permanent injunction containing these broader terms of course superseded the preliminary injunction, which was but a provisional remedy, and which by its own terms was effective only pending the further order of the Court. (*Sheward* v. *Citizens' Water Co.*, 90 Cal. 635, 638 [27 P. 439].)

Defendant's argument that the injunctions granted a monopoly to plaintiffs is wholly devoid of merit.

Defendant relies on *Southern California Fish Co.* v. *White Star Canning Co.*, 45 Cal.App. 426 [187 P. 981] and on *American Automobile Assn.* v. *American Automobile Owners Assn.*, 216 Cal. 125 [13 P.2d 707]. Neither case is in point for the reasons stated in *Rosenthal* v. *Brasley-Krieger Shoe Co.*, 19 Cal.App.2d 257 at 260 [64 P.2d 1109].

■ Defendant placed in evidence a writing signed by Yellow Cab Company (of San Francisco) granting the right to use the trade name and color "Yellow Cab Company" within Marin County. He claims that the right to enjoin the use of the "Yellow Cab" type of cap (which is trade-marked) resides in that company (the trade-mark owner) and not in the plaintiffs, and that the permanent injunction should be modified to eliminate yellow caps from its prohibitions. Plaintiffs' drivers have been wearing this type of cap since 1943, while defendant's drivers have done so only since August, 1946. The answer to this contention is that a prospective passenger could be just as easily deceived by a patented yellow cap (worn by permission of its patentee) as by an unpatented one, and it is deception, and not infringement of trade-mark, that is the gist of such actions as this.

The order and judgment are, and each of them is, affirmed.

Nourse, P. J., and Dooling, J., concurred.