## SUNBEAM CORPORATION v. SUNBEAM FURNITURE CORPORATION et al.

### No. 8727–Y.

United States District Court
S. D. California, Central Division.

Feb. 15, 1950.

The plaintiff, Sunbeam Corporation, is an Illinois corporation which has been engaged continuously since 1912 in the manufacture and sale of electrical appliances. It owns and operates a large manufacturing establishment in Chicago, Illinois, where its products are manufactured. Its business is national and international in scope. It owns and operates subsidiary manufacturing plants in Toronto, Canada and Sydney, Australia,—which are also engaged in the manufacture of various electrical appliances. It has dealers and distributors in all the States of the United States and in many foreign countries, through which its appliances are sold and distributed. The annual volume of business done by the plaintiff amounts to many million dollars a year. It spends large sums of money in advertising its products.

In the year 1921, the plaintiff adopted, and has since used, the trademark "Sunbeam" on its products. Such use has been continuous since that time, and many products, such as electric irons, mixers, shavers, toasters, lamps and other similar products, have been sold under the trademark.

Beginning August 2, 1921, and up to July 28, 1948, the plaintiff has registered its trademark "Sunbeam" in the United States Patent Office for a large variety of products. Since February 8, 1946, the plaintiff has used, nationally, "Sunbeam" as a part of its corporate name. Beginning in 1946, and long after the adoption and use by the plaintiff of its trademark "Sunbeam", the defendant, "Sunbeam Furniture Corporation", a corporation and the individual defendants, Arthur M. Luster, father, Melvin R. Luster, son, and Frieda Luster, mother, began the sale of electric household appliances, especially electric lamps, to which the label "Sunbeam" was attached. They also used the name "Sunbeam" in their corporate name, and as a trade name and mark for some of the products sold by them.

By the complaint, the plaintiff sought injunctive and other relief on the ground of infringement of trademark and unfair competition.

The defendants denied infringement.

The evidence in the case showed that electrical lamps bearing the trademark "Sunbeam" on labels attached to them were manufactured by Expert Lamps, Inc., an Illinois corporation, controlled by the Luster family and were displayed on the floor of the defendant's establishment at Los Angeles, and also in their display window, and that such lamps were purchased from the defendants.

Results of surveys conducted in Los Angeles by various persons employed by the plaintiff, at an interval of two years, showed that a majority of the persons to whom a photograph of the lamp sold by the defendant with the trademark "Sunbeam" on it was shown, thought that the product was that of the plaintiff.

Other facts are referred to in the opinion which follows.

Rogers & Woodson, B. W. Pattishall, William T. Woodson, Lewis S. Garner, Chicago, Ill., John F. McCanna, Chicago, Ill., Lyon & Lyon by Reginald E. Caughey, Los Angeles, Cal., for plaintiff.

Huebner, Beehler, Worrel, Herzig & Caldwell, by Vernon D. Beehler, Herbert A. Huebner, Los Angeles, Cal., for defendants.

YANKWICH, District Judge (after stating the facts as above).

■ These facts are established beyond dispute: The plaintiff has a trademark and the defendant has none. The plaintiff preceded the defendant by many years in the field.

For, while the use of the name "Sunbeam" by the plaintiff as part of its corporate name is of recent origin, the trademark "Sunbeam" as applied to its products dates back to 1921. The pleadings in the case admit the existence of the trademark and the use of the name in association with

854

various products in the electrical field by the plaintiff and its predecessor in interest for a long period of time.

The validity of the trademark has not been attacked in any manner. So the only problem with which the Court is confronted is whether there is similarity in the names, which is likely to create confusion. If this is answered in the affirmative, the question of actual result becomes immaterial, in view of the present status of the case,—the plaintiff having waived damages in open court and seeking only an injunction against the use by the defendant of the name "Sunbeam" in conjunction with the products which it sells.

## I. Trademarks and Trade Name Infringement

Whatever may have been the state of the law in the past, at the present time, there is little, if any, distinction between the principles which apply to trademark infringement and those which apply to infringement of trade names. The latter type of infringement is of judicial, while the former is of statutory origin.

The basis for the action for infringement is Section 1114 of Title 15 of the United States Code, which provides, in substance, that anyone who shall, in commerce, use, without consent of the registrant, any reproduction, counterfeit, copy or colorable imitation of a registered trademark "in connection with the sale, offering for sale, or * * * reproduce, counterfeit, copy, or colorably imitate any such mark * * * shall be liable for any or all of the remedies hereinafter provided."

As stated, the remedy for infringement of a trade name is of judicial source. Courts, in applying the principles of equity, have evolved the idea of fair dealing. And in seeking to prevent one from enriching himself at the expense of what another had built up, and in trying to protect the public against the deception which flows from "palming off" or "passing" one's goods as those of another, to the development of which one has not contributed,—courts have formulated the doctrine of unfair competition. See, Zachariah Chafee, Jr.: Unfair Competition, 1940, 53 Harv.L.

Rev. 1289; American Philatelic Society v. Claibourne, 1935, 3 Cal.2d 689, 697, 46 P.2d 135; International, etc., Workers v. Landowitz, 1942, 20 Cal.2d 418, 422, 126 P.2d 609; Eastern Columbia, Inc., v. Waldman, 1947, 30 Cal.2d 268, 181 P.2d 865; Milani v. Smith, 1948, 85 Cal.App.2d 163, 192 P.2d 830.

Subdivision (b) of Section 1338 of the new Title 28 reads: "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and unrelated claim under the copyright, patent or trademark laws." The Restatement of Torts contains very explicit summaries of the law. I refer to paragraphs 715, 716, 717 of the Restatement of Torts, and particularly to comment (a) and (b) under section 717, which show that, at the present time, there is little difference between the principles applicable to the two branches of the law. Comment (b) under section 717, reads: "The liability imposed under the rule stated in this Section protects a person against harm to his business which the actor might cause by misleading prospective purchasers into identifying the actor's goods, services, or business with those of the other. The ultimate issue in infringement cases is the likelihood that prospective purchasers will be so misled."

This coincides with the law as it has been declared by our Court of Appeals and by the highest courts of California, which we have to follow on the cause of action relating to unfair competition.

In Safeway Stores v. Dunnell, 1949, 9 Cir., 172 F.2d 649, 656, one of the latest cases on the subject, there is a statement of the law which bears upon the chief defense offered in this case,—namely, *that the fields are not competitive.* After referring to the Stork Club case, Chief Judge Denman uses his language: "Even assuming the absence of any competition of toilet tissues and Dunnell's covers for protection of toilet users, Stores is entitled to its injunction. The principle is well stated in Judge Learned Hand's opinion in Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, at page 974, 'However, it has of recent years

been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful.' "

■ As to *Stork Restaurant v. Sahati,* 9 Cir., 1948, 166 F.2d 348, 354, reference should be made to sub-heading 7 of the opinion in which Judge Garrecht thus sums up the paragraph to follow: "Direct or 'Market' Competition is Not An Essential Ingredient of Unfair Competition." The text reads: "The appellees insist that, because of their 'most humble field of operation' they cannot be considered to be in competition with the appellant, whose place 'is of the highest'. Since they are not in competition at all, obviously—so runs their argument—they cannot be in unfair competition with the appellant. Plausible as this contention may seem, it does not correctly state the law." This is followed by a reference to the Benson case, Academy of Motion Picture Arts and Sciences v. Benson, 1949, 15 Cal.2d 685, 104 P.2d 650, and a quotation from Judge Learned Hand's opinion, which includes the portion already given. The reference to the Benson case in this and in other opinions, indicates that the principles which it declared are thoroughly embedded in the law of California and in the law of this Circuit. Indeed, Judge Denman refers to it and cites it in Footnote 3 of his opinion in Safeway Stores v. Dunnell, supra. Rightly. For the Benson case is one of the clearest applications of the rule that unfair competition may exist, *despite dissimilarity of field.*

The action was brought by the Academy of Motion Picture Arts and Sciences,—

a group composed of persons interested in motion pictures, either as directors, producers and others, whose chief object is educational in conducting surveys and research relating to motion pictures and in fostering quality in pictures, in settling disputes between its members, and the like. The defendant was conducting a dramatic and coaching school, instructing persons in the art of acting for motion pictures and the stage. The Court held there that the absence of identity of field, not only of product, was not sufficient to avoid unfair competition. The brief summary of its ruling on this subject reads: "And it does not appear necessary that the parties be in competitive businesses or that the injury has already occurred." 15 Cal.2d 691, 692, 104 P.2d 653.

■ These cases lay down two fundamental principles: One is, that it is the *likelihood of confusion* which determines whether an actionable wrong has been inflicted by the defendant on the plaintiff through the use of a similar mark, and not the actual result. Differently put, *if the court can say from the evidence before it that the similarity is such as is likely to create confusion,* then it matters not whether the record shows that confusion did *actually result.*

■ The other principle is that infringement may occur, although the field of activity of the late comer be not the same. As to trademark infringement, the statute speaks of the likelihood "to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services." 15 U.S.C.A. § 1114(1).

As to unfair competition, the Courts, in like manner, stress the *likelihood of confusion of source.* The language of Judge Learned Hand in Yale Electric Corporation v. Robertson, 1928, 9 Cir., 26 F.2d 972, 973, is very explicit: "The law of unfair trade comes down very nearly to this—as judges have repeated again and again—that one merchant shall not divert customers from another by representing what he sells as emanating from the second. This has been, and perhaps even more now is, the whole

Law and the Prophets on the subject, though it assumes many guises. Therefore it was at first a debatable point whether a merchant's good will, indicated by his mark, could extend beyond such goods as he sold. How could he lose bargains which he had no means to fill? What harm did it do a chewing gum maker to have an ironmonger use his trade-mark? The law often ignores the nicer sensibilities." Then the opinion states that if there is imitation, it matters not that the imitation is by one who does not occupy the same field, in language already quoted. In sum, the Courts have become realistic and say that if I, through years of practice of a trade or profession, or by years of manufacturing of a certain product, have succeeded in having that product identified with my name, then, *regardless of any trademark rights*, the latecomer in the field should not, by applying it to an entirely different product, capitalize, —or, to use the street expression,—"cash in", on what I have builded.

Some of the cases referred to found actual confusion and that the field was, in some respects, the same or similar.

But the principles which we are discussing have been applied to cases in which there *was total absence* of similarity. The Benson case, already referred to, applied this norm. Reference should be made to some later cases. In Wood v. Peffer, 1942, 55 Cal.App.2d 116, 130 P.2d 220, the court said: "It is true that the complaint contained no allegation of actual business competition between the parties. However, defendant did not demur upon that ground, and at the trial made no objection to evidence which, as hereinafter stated, clearly proved the existence of such competition." The opinion then refers to a group of older cases which had insisted that competition was necessary and states that these cases represent the minority rule, and disapproves them. It concludes finally that the present rule is that it is not necessary to prove *actual market competition* where the purpose of the action is to secure injunctive relief: "And in line with the foregoing statement, our own Supreme Court has held that so far as injunctive relief is concerned, it is not necessary that the parties be in actual competition if confusion and deceit will result from the acts of the defendant." (P. 122.) See, Academy of Motion Picture Arts and Sciences v. Benson, supra, 15 Cal.2d at pages 691-692, 104 P.2d 650. Compare the concurring of opinion of Mr. Justice Emmet H. Wilson in Scutt v. Bassett, 1948, 86 Cal. App.2d 373, 377-379, 194 P.2d 781.

Winfield v. Charles, 1946, 77 Cal.App. 2d 64, 175 P.2d 69, 73 contains a very good summary of the law of California which reads: "It is unnecessary, in such an action, to show that any person has been confused or deceived. It is the likelihood of deception which the remedy may be invoked to prevent * * * 'It is sufficient if injury to the plaintiff's business is threatened or imminent to authorize the court to intervene to prevent its occurrence.'" And again:

"Appellant argues that the record shows that plaintiff and defendant do not manufacture the same items or solicit the same trade and customers. Plaintiff's name has become a valuable asset in connection with any equipment associated with automobiles, and the evidence shows that the bulk of defendant's business is manufacturing automobile jacks and wrenches. However, it is not always necessary to prove actual market competition where the purpose of the action is to secure injunctive relief. It was stated in Wood v. Peffer, * * * ' "We are aware, however, that equity may be involved without market competition. Emphasis should be placed on the word 'unfair,' rather than 'competition.' " '.

"Plaintiff has established a reputation for reliability and meritorious products. If articles which are not produced by him are attributed to him or associated with his name, the injury is obvious. The court stated in the case of Del Monte Special Food Company v. California Packing Corporation, 9 Cir., 34 F.2d 774, at page 775: 'The injury to the appellee by the use of the Del Monte Brand by the appellant does not result from preventing sale by appellee of oleomargarine of its own, but from a representation to the public that it produces a product which it does not in fact produce and over which it has no control. Its

reputation for quality is therefore placed to some extent in the hands of a corporation who owes it no allegiance and has no concern in maintaining the high reputation established by the appellee, and who may utilize that reputation to sell the public an inferior production.' Furthermore, in the interest of fair dealing courts of equity will protect the person first in the field doing business under a given name to the extent necessary to prevent deceit and fraud upon his business and upon the public. For this purpose the second in the field may be enjoined from using the name, even though the principal places of business are at a considerable distance from each other. * * * 'No inflexible rule can be laid down as to what conduct will constitute unfair competition. Each case, is in a measure, a law unto itself. Unfair competition is a question of fact. * * * The universal test question is whether the public is likely to be deceived.'" (P. 69.)

In Sunbeam Corporation v. Sunbeam Lighting Company, 1949, D.C.Cal., 83 F. Supp. 429, we were concerned with the same trademark. It was contended that the field was different, because the chief product of the defendant corporation was lighting fixtures of the fluorescent type. The answer was: "I did not intend to rule, and could not very well rule, under the law of the Ninth Circuit, that the mere fact that the custom of the late comer came from a limited segment of an industry is sufficient to avoid infringement Indeed, the rule is the other way. For, if there is any principle established firmly in the law of the Ninth Circuit, and in the law of California, which must govern the unfair competition phase of the case,—it is that infringement and unfair competition may be found to exist as between non-competitive fields and products."

The opinion continues: "And it is implicit in the last decision of our Court of Appeals on the subject, Lane Bryant, Inc., v. Maternity Lane Limited of California, 9 Cir., 1949, 173 F.2d 559, and in the leading California cases which have, time and again, been referred to by our courts in disposing of these matters. * * * All these cases adopt as the test, the effect of imitation on the average person and stress the point that the power of a court of equity may be invoked 'without market competition.' They do not limit the application of the rule to fanciful names. They apply it to ordinary names when they have acquired a secondary meaning, i. e., they have become so associated with a product as to create what the Restatement (Restatement, Torts, Sec. 730) calls 'confusion of source' in the minds of the public. Any other rule would be unrealistic and encourage deception and fraud." (P. 430.)

So that, whatever may be the attitude of courts elsewhere, the law as laid down for my guidance by the decisions of the Court of Appeals for the Ninth Circuit and the decisions of the highest courts of the State of California is as stated.

## II. Infringement is Present.

The facts in the case are very clear, and are made clearer by the deposition of Arthur Luster, the father, and controlling stockholder of the defendant corporation and of Expert Lamps, Inc. It is apparent from this deposition and from the history of the defendant corporation, that we are dealing with a corporation which manufactures the product sold here, and which is controlled, just as is the local corporation, by members of the same family.

We have a situation in which a manufacturer is doing business under a different name, but having adopted as a tradename for electric products, for lamps, the name "Sunbeam", causes to be organized in California a corporation, of which he owns 50 per cent of the stock,—a corporation of which he, as well as his wife are officers,—a corporation which is operated by one of his sons and which he advertises in his eastern advertisements as one of the outlets for the lamps which the Eastern concern manufactures.

This presents an entirely different aspect than the ordinary situation of a wholesaler who merely distributes an article under a label, over which he has no control, an article which comes into his shop along with the product of other manufacturers.

In view of this, the insistence of the defendant that we should not penalize a wholesaler for a condition which is beyond his control and hold him to be an infringer merely because, upon a product which he has sold, there was a trademark or trade name which he may not even have seen—loses its entire force.

The wholesaler before us has an interest in promoting the sale of the product made by the other corporation, because both are family corporations, controlled and owned by the same persons. So that, if motive were material, we have a motive which changes the act from a fortuitous one into one done deliberately for the purpose of achieving unfairly a definite result.

In the light of what has been said, the conclusion is inevitable that there is infringement of the trademark and of the trade name by the defendant. The use of the name, its attachment to an electrical product, is of a character which is likely to result in confusion. More, the evidence in the case shows that *it did result* in confusion.

However, even if there had been no direct evidence of confusion, the conclusion would be warranted that the use of such name by the defendant, under the circumstances, is likely to create confusion. The name was adopted deliberately, from the very beginning, even before the present corporate name was adopted. While they were still a sales corporation they used the name "Sunbeam". And the explanation of the son that "Sunbeam" related to "California sunshine" does not carry conviction, in view of the fact that long before he came to California, his family corporation, at a time when he was still at school, was using the name on its products.

There is purposeful continuity demonstrating that it was not an accidental adoption of a name, but the continued use in California of a name already used in the East in the manufacture and sale of electric lamps. This coincided with the extension of the family's activities to the Pacific coast.

The evidence offered on the part of the defendant does not, in reality, contradict these conclusions. The defendant Melvin Luster and one of his salesmen, state that no confusion has ever been called to their attention.

Giving full credence to this statement, it loses its entire significance, in view of the conviction of the court, based upon the entire record in the case, that the use of the name was deliberate and is likely to, and did, result in confusion.

The right of the plaintiff to the trademark not having been challenged and the priority of their use of it being thoroughly established, judgment will be for the plaintiff.