[L. A. No. 16700. In Bank.—July 22, 1940.]

ACADEMY OF MOTION PICTURE ARTS AND SCIENCES (a Corporation), Appellant, v. JENNIE BENSON, Respondent.

Loeb, Walker & Loeb, Loeb & Loeb, Norman Newmark and Herman F. Selvin for Appellant.

Wm. La Plante for Respondent.

SHENK, J.—In this action for injunctive relief the trial court sustained the defendant's demurrer to the complaint without leave to amend, and denied a motion for leave to file a proffered amended complaint. From the judgment of dismissal which followed the plaintiff has appealed.

The proposed amended complaint alleged:

That the plaintiff, Academy of Motion Picture Arts and Sciences, is a nonprofit California corporation organized in May, 1927, with its principal place of business in Hollywood; that its purposes are to represent and coordinate the various branches of the motion picture industry in their relations with each other, with other associations, both within and without the motion picture industry, and with the general public to advance the arts and sciences of motion pictures by conferring awards of merit to signalize outstanding creative achievements, by conducting research and furthering technological progress, and by promoting the interchange and development of knowledge through meetings, publications and

in other ways; to advance the welfare of the industry by providing facilities for the arbitration and conciliation of disputes within the industry, and by establishing and administering agreements between and within the industry's branches, and in other ways promoting harmonious and just relations therein. It was further alleged that the plaintiff nationally and internationally enjoys a high reputation for the honesty and integrity of its methods and for the quality of service which it performs; that due to the wide publicity given to the plaintiff's organization through motion picture journals, newspapers and magazines, it has become generally known throughout the United States and in foreign countries as "The Academy" and "The Motion Picture Academy"; that it has a membership of about eight hundred persons drawn from all branches of the motion picture industry, including actors, writers, producers, directors and technicians, and is the only organization in existence composed of members from all branches of the motion picture industry and devoting itself to the purposes stated; that awards of merit are annually conferred by the plaintiff for the outstanding motion picture production, for the best performance by an actor, for the best performance by an actress, the best achievement in directing, cinematology, sound recording, and art direction; that the awards also include a scientific or technical award, and a writing award for the best adaptation and one for the best original motion picture story; that a motion picture receiving an annual award of merit is widely advertised and becomes popularly known as an "Academy Award", or by other appropriate reference conveys to the general public the information that either the picture or some of the actors or participants in its production have received academy awards of merit from the plaintiff.

It was alleged that in October, 1937, the defendant, Jennie Benson, who for several years had conducted in her own name a dramatic and coaching school in Hollywood devoted to instructing persons in the art of acting for motion pictures and the stage, adopted and has since used for her school the name, "The Hollywood Motion Picture Academy"; that the plaintiff, in a written notice to the defendant, promptly protested the use of that name; that it was the defendant's intention and purpose by the use of such name to deceive and mislead the public generally and that she has induced cer-

tain persons and prospective students in particular into believing that her school was being conducted by or in connection with the plaintiff, and that persons trained in the defendant's school had received or would receive "Academy Awards" for meritorious performances; that the defendant was thereby attempting to gain the benefit of the plaintiff's reputation and good will and to utilize the same to attract pupils to her school; that the defendant's use of the name, The Hollywood Motion Picture Academy, and particularly of the word "academy" therein, and any failure of persons trained in her said school to measure up to the plaintiff's standards and to receive academy awards, would lower the reputation, standing and prestige of the plaintiff, its usefulness to the motion picture industry and to the public would be lessened, and the plaintiff would be irreparably damaged and the public defrauded by reason of the defendant's continuing the use of said name. The plaintiff prayed that the defendant be enjoined from using the name objected to or any other colorable imitation of the plaintiff's name.

If the complaint proffered herein stated a cause of action, the plaintiff was entitled to file it. (*Frantz* v. *Mallen,* 204 Cal. 159 [267 Pac. 314]; sec. 473, Code Civ. Proc.; 21 Cal. Jur., pp. 181, 182.)

 Generic terms and words descriptive of place are not subject to exclusive appropriation. (*American Automobile Assn.* v. *American Automobile Owners Assn.,* 216 Cal. 125 [13 Pac. (2d) 707, 83 A. L. R. 699]; *Dunston* v. *Los Angeles Van & Storage Co.,* 165 Cal. 89, 94 [131 Pac. 115]; sec. 991, Civ. Code.) The plaintiff points out, however, that it has not formulated its case on the claim of technical trade-mark or exclusive right. Its cause of action is based on the distinctive or secondary meaning which its name has acquired and on the unfair and deceptive use of that meaning which it is alleged the defendant has made and threatens to continue to make, to the damage of the plaintiff in particular and the confusion and deceit in relation to the public generally.

The businesses of the parties are not directly competitive, although both are connected with the motion picture industry. By the use of the name Hollywood Motion Picture Academy the defendant does not take away from the plaintiff and draw to herself any business which the plaintiff other-

wise would receive. Nevertheless, the plaintiff relies on certain elements as establishing that the words Motion Picture Academy, and especially the word "Academy", as against the defendant, have acquired a secondary meaning whereby the plaintiff will be irreparably injured by the defendant's use of such words; and that the plaintiff is entitled to have the defendant enjoined from any deceptive use of words which in the public mind will confuse the plaintiff's and the defendant's businesses. Those elements are that the business of the plaintiff and the business of the defendant are concerned with motion pictures, and that both originate in Hollywood. The plaintiff contends that these facts, coupled with the use of the name chosen by the defendant, will result in utmost confusion and consequent injury to the plaintiff and deceit upon the public.

██ The decisions of the courts for the most part are concerned with the principles applicable to infringement and unfair competition in respect to businesses which are directly competitive. But we perceive no distinction which, as a matter of law, should be made because of the fact that the plaintiff and the defendant are engaged in non-competing businesses. In situations involving the use of proper surnames in non-competitive businesses it has been held that where confusion was shown as likely to result the relief should be accorded to the complaining party. (*Tiffany & Co.* v. *Tiffany Productions,* 237 App. Div. 801 [260 N. Y. Supp. 821] (affd. 262 N. Y. 482 [188 N. E. 30]) ; *Yale Electric Corp.* v. *Robertson,* 26 Fed. (2d) 972.) Likewise it has been said that "without regard as to whether there is actual market competition between the parties for the same trade, it is sufficient if the unfair practices of the one will injure the other". (63 Cor. Jur., p. 390, and cases cited in note.) The same author, at page 394, in distinguishing between the primary and secondary meaning of generic terms, states: "In their primary descriptive sense, they are *publici juris,* and all the world may use them, but they must be used in such a way as not to falsely convey the secondary meaning, for this would constitute unfair competition as tending directly to pass off the goods or business of one man as and for that of another. This is what is known as the doctrine of secondary meaning and its perception by the courts was the genesis of the law of unfair competition as distinguished from technical trade-marks.

In all this class of cases where the word, name, or other mark or device is primarily *publici juris* the right to relief depends upon the proof. If plaintiff proves that the name or word has been so exclusively identified with his goods or business as to have acquired a secondary meaning, so as to indicate his goods or business and his alone, he is entitled to relief against another's deceptive use of such terms, but if he fails in such proof, he is not entitled to relief. . . . Use by others may not be absolutely prevented, but only the misleading manner of using it will be enjoined, leaving defendant at liberty to use it in all honest ways not deceptive Practically the whole law of unfair competition is an application of these principles. Unfair competition by means of generic, descriptive, personal, and geographical names are common instances.'' These general principles have been applied by the courts of this state. (*Weinstock, Lubin & Co.* v. *Marks,* 109 Cal. 529 [42 Pac. 142, 50 Am. St. Rep. 57, 30 L. R. A. 182] ; *Banzhaf* v. *Chase,* 150 Cal. 180 [88 Pac. 704] ; *Modesto Creamery* v. *Stanislaus Creamery Co.,* 168 Cal. 289 [142 Pac. 845] ; *Lutz* v. *Western Iron & Metal Co.,* 190 Cal. 554 [213 Pac. 962] ; *Jaynes* v. *Weickman,* 55 Cal. App. 557 [203 Pac. 828] ; *Mills* v. *Conservatory of Music,* 47 Cal. App. 300 [191 Pac. 546] ; see, also, *Federal Securities Co.* v. *Federal Securities Corp.,* 129 Or. 375 [276 Pac. 1100, 66 A. L. R. 934], and cases cited.)

The plaintiff, as stated, is not depending upon the deceptive use of a trade-mark, but is alleging the deceptive and injurious use of what may be designated as a trade name, and is seeking to have the secondary meaning which it has built up protected from encroachments and deceptive use by the defendant to its injury. The complaint shows that the defendant had conducted her school heretofore under her own name; that she conducts her school in Hollywood, which is a center of the motion picture industry, for the purpose of training actors; and that the plaintiff also operates from Hollywood. True, the word ''Academy'' in one sense denotes simply a school; but in a well-accepted meaning it also signifies an institution similar to a college or univers for the study of higher learning; also ''a society of learn men united for the advancement of the arts and sciences an literature, or of some particular art or science; as, the Frenci *Academy*''. (Webster's New International Dictionary, sec-

ond edition.) The defendant has adopted a name which *prima facie* is broad enough in its concept to be mistaken by the ordinary unsuspecting person for the institution created by the incorporators of the plaintiff. The plaintiff has stated a cause of action which, if supported by proof, would entitle it to the relief sought, or which would require the defendant to alter her trade name by some designation calling attention to the limited scope of her school in order to prevent confusion with the institution or society represented by the plaintiff—as stated by Justice Holmes in *Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.,* 208 U. S. 554, 559 [28 Sup. Ct. 350, 52 L. Ed. 616], ''so as to give the antidote with the bane''.

The case before us may be novel, but it does not follow that the plaintiff may not be entitled to some relief. In calling attention to the novelty of the facts in *American Philatelic Society* v. *Claibourne,* 3 Cal. (2d) 689 [46 Pac. (2d) 135], this court said: ''It is also to be borne in mind that the rules of unfair competition are based, not alone upon the protection of a property right existing in the complainants, but also upon the right of the public to protection from fraud and deceit. . . . It may be granted that this case is a novel one . . . but the fact that a scheme is original in its conception is not a good argument against its circumvention. . . . When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one. There is a maxim as old as law that there can be no right without a remedy, and in searching for a precise precedent, an equity court must not lose sight, not only of its power, but of its duty to arrive at a just solution of the problem.'' (See, also, *Weinstock, Lubin & Co.* v. *Marks, supra.*) Also, in *United Security Bank & Trust Co.* v. *Superior Court,* 205 Cal. 167 [270 Pac. 184], this court reaffirmed the jurisdiction of the court of equity to restrain an unfair use of a corporate name by others, ''for the name of a corporation is a necessary element of its existence, and, generally speaking, even aside from statutory provision, the right to its use will be protected by the court sitting in equity, so far as may be necessary to safeguard property rights developed under it and to protect against fraud, actual or constructive''. ■ And it does

not appear necessary that the parties be in competitive businesses or that the injury has already occurred. It is sufficient if the names, although not identical, are sufficiently similar to cause confusion and injury. (*Colorado National Co. v. Colorado Nat. Bank of Denver*, 95 Colo. 386 [36 Pac. (2d) 454] ; *Standard Oil Co. of New Mexico, Inc., v. Standard Oil Co. of California*, (C. C. A.) 56 Fed. (2d) 973 ; see note with cases cited, 66 A. L. R., at pp. 967, 968, 971, 972.) The general principle is thus stated in *Celluloid Mfg. Co. v. Cellonite Mfg. Co.*, 32 Fed. 94, at page 97 : "Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law." (See, also, 26 R. C. L., p. 888, and cases cited in note.)

The judgment is reversed.

Curtis, J., Edmonds, J., Carter, J., and Gibson, C. J., concurred.