231 F.2d 205
 NORTH AMERICAN AIRCOACH SYSTEMS, Inc. (also known as North American Airlines Agency Corp., and North America Airlines Agency Corp.), Twentieth Century Air Lines, Incorporated, James Fischgrund, Jack B. Lewin and Stanley D. Weiss, Appellants,
v.
NORTH AMERICAN AVIATION, Inc., Appellee.
 No. 14271.
 United States Court of Appeals Ninth Circuit.
 September 28, 1955.
 Rehearing Denied November 7, 1955.
 
 COPYRIGHT MATERIAL OMITTED Sidney Fischgrund, Robert S. Dickerman, Los Angeles, Cal., for appellants.
 Chadbourne, Parke, Whiteside, Wolf & Brophy, Charles Pickett, New York City, Flint & MacKay, Edward L. Compton, Arch R. Tuthill, Los Angeles, Cal., for appellee.
 Before STEPHENS and FEE, Circuit Judges, and LING, District Judge.
 JAMES ALGER FEE, Circuit Judge.
 
 
 1
 North American Aviation, Inc., filed action for injunction on account of unfair competition, claiming the sole and exclusive right to use the name "North American" in connection with airplanes and aviation. Complete diversity of citizenship between plaintiff and all defendants founded jurisdiction in the District Court, where the action was initiated. It was charged by the complaint that defendants have unlawfully and fraudulently intended and undertaken to appropriate the name and the benefit of the celebrity and good will developed by plaintiff, which resulted in a secondary meaning acquired by the name in connection with all phases of aviation. The appropriation is said to have resulted pursuant to a fraudulent conspiracy in which the individual defendants were the prime movers. It was alleged that defendants have used the name "North American" in various ways in connection with airplanes and aviation industry, on tickets, uniforms, time and fare schedules, at ticket offices and airports in connection with business of buying, selling and reserving airline transportation, and have used the name upon airplanes. It was also pleaded that these actions of defendants were designed, intended and calculated to and did lead to confusion between plaintiffs and others using the name and deceived other persons into believing that a connection existed between plaintiff and organizations fostered by defendants. Defendants denied that plaintiff had any exclusive right to the use of the name "North American" except in the manufacture of aircraft, and denied any appropriation of the benefit of the reputation of plaintiff or that they caused the public to believe a connection existed between plaintiff and defendant.
 
 
 2
 After a lengthy trial before an experienced judge, Hon. Peirson M. Hall, findings were made in favor of plaintiff on all contentions. A permanent injunction against the use of "North American" by defendants was granted, and damages were awarded to plaintiff. This appeal followed.
 
 
 3
 It is the principal contention of defendants here that plaintiff did not have and could not acquire an exclusive use of the name "North American" as against others operating in the same geographic area. Especially, it is claimed defendants who operate ticket agencies in connection with air transportation have a right to use the name of the continent in which they do business. It is further urged that, since defendants do not manufacture airplanes for sale to governmental agencies, which defendants claim is the sole business of plaintiff, no injunction should be granted against use of the name in this limited field.
 
 
 4
 Under a situation where the name "North American" had not been appropriated exclusively in connection with all phases of aviation by plaintiff for a great number of years without challenge, there might have been some slight basis for the contention that there could be only a limited use of a geographic designation. But the identification of the name with plaintiff in such connection was shown by the evidence to be absolute for a long period of time before defendants began their activities. It is exactly this feature which causes plaintiff to seek relief in the courts. The purposes for which plaintiff was organized, its history as a business concern, the relationship of the public to the activities so conducted and the good will built up in that business are important factors in determining the existence and extent of a secondary meaning of the name of plaintiff.
 
 
 5
 Plaintiff was organized in December, 1928. Manufacture of airplanes and other aircraft, carrying the mail and operation of air navigation facilities and incidental equipment were its specific objectives. "North American Aviation, Inc." was adopted as its name at that time. This was intended and aptly chosen for the purpose of identifying plaintiff with all phases of aviation. Plaintiff at that time was a holding and management company, owning stock in several companies operating in various phases of aviation. Some subsidiaries ran airlines, others manufactured aircraft and others made electronic equipment. The name "North American" was from the beginning better known generally than the names of the operating companies. Almost from its inception, the stock of North American Aviation, Inc., has been traded on the exchange, and the operating subsidiaries referred to themselves using such terms as "A Division of North American Aviation, Inc." In 1934, plaintiff ceased to be a holding company and became an operating aviation company with two divisions: (1) manufacturing, (2) air transportation. Plaintiff used the "North American" name in the operation of this air transportation division in that "air transportation activities were conducted under the name of Eastern Air Lines, Division of North American Aviation, Inc., which appeared in time tables which were distributed and available at offices maintained in several cities in the United States, on tickets and baggage checks and stickers issued to passengers, and on various other material used by plaintiff."
 
 
 6
 Plaintiff has spent a great deal of money over the years in the advertising and publication of the name "North American". Besides that, owing to the circumstances hereafter mentioned in connection with its activities during the war, plaintiff received a tremendous amount of unpaid publicity. Plaintiff has in this regard used the letters "NAA" together with a symbol or design devised by it, consisting of a triangle enclosing these letters and bearing a formalized drawing of a bird. This symbol was used by plaintiff on airplanes in 1935 and was registered in the United States Patent Office. Plaintiff also used extensively the slogan, "The North American way," since sometime in 1941.
 
 
 7
 In 1935, plaintiff built a new plant at Los Angeles Airport, which has been greatly expanded during the years and is still its headquarters. In 1938, apparently because of the approaching emergency, plaintiff sold the assets of its air transport division to a new independent corporation known since as "Eastern Airlines." Although plaintiff has not operated a scheduled airline since 1938, for many years it has been operating several airplanes to transport people doing business with it and its own employees.
 
 
 8
 Irrespective of the fact that its factories were located on the continent, the name of plaintiff had a world wide significance owing to its activities in a war industry. This is so well known that the Court would take judicial notice of it if it had not been proved. But there was exact and explicit proof. Airplanes manufactured by plaintiff and bearing its name were furnished to the government of the United States and flown all over the world. There is testimony to the effect that these planes carried the insignia of North American throughout the world. Defendants cannot avoid this record by pointing out that the advance trainers, of which plaintiff built about sixteen thousand through 1945 and which were the standard airplanes used for advance training of pilots by the United States and thirty-three different countries of the United Nations and of which many are still used throughout the world to train pilots, were popularly denominated "ATS" instead of "North American." The "B-25" or "Mitchell" bomber of "North American" manufacturing was used in the spring of 1942 in the initial raid on Tokyo from Shangri La. These were used throughout the war in the South Pacific and in Europe. Plaintiff built about ten thousand of them. North American P-51, popularly known as the "Mustang," was known at the time as the "most aerodynamically perfect pursuit plane in existence." It was the outstanding fighter of World War II. Sixteen thousand of these were built by plaintiff. These flew over both fronts in World War II. Since the end of World War II, plaintiff developed many new types of military aircraft: the North American F-86, "Sabrejet," maintained supremacy of the air for our country in Korea. In view of this, there is no substance to the contention of defendant that, since these aircraft were called popular names the activities of plaintiff did not strengthen its use of the name "North American."
 
 
 9
 The proof is irrefutable that "North American" in connection with aviation means the plaintiff solely and exclusively today as well as in the past. The finding of the trial court is that the name had "acquired a secondary meaning, with respect to plaintiff, in connection with airplanes and in the aviation industry. It identified, in connection with airplanes and in the aviation industry, plaintiff and no one else, and was associated, by persons in the aviation industry and by the general public, with plaintiff and no one else." The exclamation of the learned trial judge was only a reflection of the impression which anyone would obtain who impartially read the record:
 
 
 10
 "I have never seen, and I cannot imagine, any case where a secondary meaning has become so attached to a party or a business as the words `North American' have to the plaintiff in this case in the entire aviation industry."
 
 
 11
 From the record and the findings, the nature of the secondary meaning of "North American" is established as referring to plaintiff alone.
 
 
 12
 The courts have made the distinction between "strong" and "weak" marks or names. Names "fanciful" in character are denominated "strong." These are designations which are generally not descriptive of the business, the persons involved or the place of business or operation. "Weak" marks are words of common speech and those descriptive of the locality or area where the services are performed or the article used or made. The theory is that generally there cannot be a monopoly of such a designation.[1] In practical experience, however, where the facts warrant, the courts grant protection even to weak marks or names with varying degrees of limitation.[2] Geographic names which have connotations of the place of use or manufacture are generally subject to use by all persons or concerns who manufacture or operate in the area. Such a name is in the public domain.
 
 
 13
 The doctrine of secondary meaning is applied as to weak names and particularly as to descriptive or geographic designations. The question of whether a monopoly of such a title has been acquired depends upon its use in relation to goods, business or service to the point where the public identifies the name with a particular individual or entity. It is extremely difficult to give to a geographic term a proprietary connotation since under ordinary circumstances it cannot be used to exclude others who operate in the same area, as above noted. But this does not mean that a name of territorial origin may not acquire a secondary or fanciful meaning.[3] When this occurs, the proprietorship in the designation or mark will be afforded as complete protection as if it were a "strong" mark at the inception.
 
 
 14
 In Phillips v. Governor & Co. of Adventurers of England Trading into Hudson's Bay, 9 Cir., 79 F.2d 971, 972, this Court held that plaintiff corporation, commonly known as "`Hudson's Bay Company'", whose charter was granted by Charles II of England, was entitled to an injunction against a person using the name "`Hudson Bay Fur Co.'" in Nevada. The facts (1) that the word "fur" did not occur in the title of plaintiffs, (2) that plaintiffs had ceased doing business in the United States and therefore was not a competitor in the retail fur business, (3) that the name was geographical in origin, and (4) that it was descriptive in character, did not militate against its monopolistic appropriation by plaintiff as applied to trade in fur. The rationale of this decision is aptly set out in another opinion, where it is said that the company's "position before the public has been altogether unique, and the name Hudson Bay, although territorial in its significance, has long been definitely identified in an unusually exclusive way with the plaintiff."[4]
 
 
 15
 The question of whether a name used by a person in any line of activity has taken on a secondary or fanciful meaning identified with the activity and the person engaging therein is one of fact. The trial court found plaintiff had adopted the name "North American" to identify it with all phases of aviation industry, specifically including air transportation, and that no one else had presumed to use the name up until 1948 in any connection relating to aviation. This connection was not dissipated by the fact that plaintiff for some years has not engaged commercially in air transportation except for limited purposes. Based upon a review of the evidence, we hold these findings of fact are proper and firmly founded. A contrary finding would have been set aside as clearly erroneous. If it were our function, this Court would enter findings which would in substance be identical.
 
 
 16
 Inherent in these findings it is established beyond dispute that "North American" has acquired a fanciful meaning connected with plaintiff. This world wide use of these products, made in factories under this name and bearing this name throughout the world in a distinguished performance which led to the supremacy of the United States in aerial warfare, changed the content of the name "North American" in connection with any phase of aviation and gave it a secondary significance and a fantastic meaning, so that it was identified not with any activities on the North American continent but within the airways and aerial fighting fields of the world as indicating plaintiff and plaintiff alone. Its celebrity is attested in Tokyo, Berlin and Seoul, the mystic isles of the South Seas, and perhaps on the Volga. "North American" had a comparable relation to aviation over the world which the "Governor and Company of Adventurers of England Trading into Hudson's Bay" had to fur. "Hudson's Bay" means fur all over the world. "North American" means all activities connected with aviation in the same area. The reputation of plaintiff in all activities with regard to aviation is characterized by universality. The designation has been given a secondary significance by the distinguished attainments of its possessor, of which all the world knows. Since this is a diversity case, the law of California is of considerable importance. This doctrine that a name geographical in origin can be monopolized by an individual in connection with particular activities is firmly established there:
 
 
 17
 "Where words have acquired, as is established beyond dispute in this case, a fanciful meaning — a meaning that has no connection with their common meaning, it may be more properly said that such meaning is their primary meaning in so far as their use in business is concerned. Their common meaning has dropped into the background. Otherwise no right to use them to the exclusion of others would have been acquired. When, however, words have acquired such a sense and are the subject of the good will and reputation of a business which they designate, there is little if anything left to distinguish them from a trademark, a symbol, characters or words which have no common meaning and which are artificial, insofar as the scope of protection afforded to the one who has the prior right."[5]
 
 
 18
 Defendants urge that, even though it was found that they were taking a "free ride upon the good will and reputation built up by the plaintiff," no sufficient basis for relief of plaintiff is thereby established. So far, therefore, we have dealt with the case without reference to the activities of defendant. We have found now that the evidence as well as the findings firmly establish North American Aviation, Inc., as the possession of plaintiff and that it has acquired not only a secondary significance, but, on account of the events of recent history, is "fanciful" in its designation of plaintiff in all fields connected with transportation by air and aviation.
 
 
 19
 It may be remarked in passing that there is no rule that knowing and unauthorized appropriation of the name by defendants is not a factor for consideration in determining whether the rights of plaintiff have been infringed. "These two considerations, the length of the user and the fraud, are enough evidence of secondary meaning to support an injunction." American Medicinal Spirits Co. v. United Distillers, Ltd., 2 Cir., 76 F.2d 124, 125.
 
 
 20
 Therefore, we now turn to the activities of defendants. Defendants began to use the name about 1950. They bought out a small private airline that had begun using the name in 1949. It will be noted that plaintiff's property in the name was by that time fully and exclusively developed, not only as against defendants, but against the world. Defendants' claim is that the exclusive use of the name by plaintiff must be confined to the manufacture of airplanes and that the name cannot be used exclusively in the air transportation field. Thus they claim that they are not in competition with plaintiff. Under the authorities, competition is not a condition precedent to the granting of an injunction.[6]
 
 
 21
 But the evidence shows that the use by defendants of the name placed them in direct competition with plaintiff. The evidence shows pictures of airplanes, manufactured by competitors of plaintiff, which have emblazoned in large letters almost the full length of the fusilage the words "North American."[7] Although these airplanes of other manufacturers are not sold under that name, it is an appropriation of the property of plaintiff to permit use of such airplanes under this designation. The public are not required to determine whether the "North American" so prominently displayed describes the manufacturer of the airplane or the ticket broker who sells transportation thereon. This is a direct competition. Added to that, defendants have appropriated the slogan, "Fly the North American Way," which had a peculiar connotation connected with airplanes manufactured by plaintiff because of its use for many years in that connection in peace and in war. Defendants have relied upon the good will and reputation of plaintiff to build up their business. They have spent money freely and in tremendous sums to encourage the belief that they were plaintiff.
 
 
 22
 The use by defendants in this connection of a copy of the stylized design which plaintiff had invented, varying the design only enough to permit defendants to hope that it would encourage the public to believe defendants were plaintiff but enough to confuse judges into the belief that defendants are in good faith, is conclusive evidence that defendants were doing all they could to identify themselves with plaintiff and capitalize on the reputation which plaintiff had built up under this exclusive name. But, of course, that does not permit them to take away plaintiff's right to operate under the name "North American" in the transport field with airplanes which it manufactures or license the use thereof by others. Plaintiff is not required to see aircraft manufactured by a competitor flown under the protection of a name which it has exclusively built up. Defendants have no right to dispute this market under the name "North American," as they are now attempting to do. Notwithstanding the disclaimer of plaintiff of the role of a "vicarious champion of the public," it is the opinion of this Court that the public has a vital interest in preventing confusion of the name of plaintiff.[8] The direct customers of plaintiff are at present governments and governmental agencies. But conditions may change.
 
 
 23
 The attempt of defendants to prevent plaintiff from in the future engaging in air transport, which was one of the purposes for which it was organized and in which field it had an honorable history, is quite improper and one which plaintiff had a right to resist.
 
 
 24
 North American Aircoach Systems, Inc., is nothing but a ticket drummer. Therefore, in advertising itself as "North American Airlines," it is not only appropriating from plaintiff, but it is also falsely describing itself to the public. Defendant "Twentieth Century," whose airplanes have been prominently marked "North American," did not actually change its name to "North American" until after this action was commenced. Defendants maintain their principal facility at Los Angeles in connection with a manufacturer of airplanes in competition with plaintiff. It is of no small consequence that plaintiff for many years before defendants invaded the field has had its headquarters and principal manufacturing plant also in Los Angeles. Defendants have pursued their course persistently, and have entirely disregarded all warnings. They were notified by plaintiff of violation in 1950 and 1951. The California Board refused to allow the registration of the corporate name of "North American Aircoach Systems, Inc.", because of the conflict with the long previously registered name of plaintiff. Defendants urge that their adoption of the name is justified by the advice of an attorney. A prerequisite to validity of such a defense is that the situation be characterized by good faith on both parts.
 
 
 25
 There was overwhelming proof of confusion of source. Instances of actual confusion in the mind of the public were stacked high in the record. The trial court found the acts of defendants were designed, intended and calculated to cause confusion and "have already misled numerous members of the general public including persons desiring to obtain air transportation or otherwise have dealings with defendants, into believing, contrary to fact, that plaintiff, or a subsidiary or branch of plaintiff under plaintiff's control and supervision, conducts defendants' businesses and operations; and that a connection exists between plaintiff, its business and operations, and defendants, their businesses and operations; and that defendants are either a part of plaintiff's organization or in some way controlled by plaintiff." When such an appropriation is coupled with representations that North American Airlines is a single air carrier or entity which, as an operating carrier, has flown a billion passenger miles without an accident and that half a million passengers have placed confidence in it as one of the four great airlines, the injury to plaintiff and the public is apparent. Under such circumstances, the public was in need of a champion. But plaintiff had its own vital interest to protect. Furthermore, the record shows that the activities of defendants have been such that shades might have been cast upon the reputation of plaintiff if it had not been so well established.
 
 
 26
 There is then no basis for the contention of defendants that the field covered by the name has been limited as to plaintiff so that ticket selling for aerial transportation can be carried on by alien interests appropriating plaintiff's name and displaying "North American" prominently upon airplanes which it did not manufacture.
 
 
 27
 Against this background, an appraisal must be made of the plea of defendants that the injunction was too broad. Here there must be a resume of the motive and intent of defendants. The record is replete with evidence of a bold, intentional and illegal seizure of the name of plaintiff. It is the duty of the courts to prevent such practice through the use of the extraordinary writ of injunction. Even if the injunction be now placed in effect, defendants have made gains which can never be taken away from them, and plaintiff has suffered intangible losses which can never be repaired. Defendants are asking the grace of the chancellor when they ask for this amelioration of the terms of the injunction. But the hands they stretch out in prayer are unclean.
 
 
 28
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 "Generic terms and words descriptive of place are not subject to exclusive appropriation. * * * The plaintiff points out, however, that it has not formulated its case on the claim of technical trademark or exclusive right. Its cause of action is based on the distinctive or secondary meaning which its name has acquired and on the unfair and deceptive use of that meaning which it is alleged the defendant has made and threatens to continue to make, to the damage of the plaintiff in particular and the confusion and deceit in relation to the public generally." Academy of Motion Picture Arts and Sciences v. Benson, 15 Cal.2d 685, 688, 104 P.2d 650, 651
 
 
 [2]
 "The proprietary connotation, — `secondary meaning,' — of a word of common speech is harder to create and easier to lose, and its fringe or penumbra does not usually extend so far as that of a coined word. But that is a matter of proof and of that alone * * *. It would therefore be wrong to make any absolute distinction between coined, and colloquial, names." Landers, Frary & Clark v. Universal Cooler Corporation, 2 Cir., 85 F.2d 46, 48
 
 
 [3]
 Phillips v. Governor & Co. of Adventurers of England Trading into Hudson's Bay, 9 Cir., 79 F.2d 971. For similar fact situations, see Academy of Motion Picture Arts and Sciences v. Benson, 15 Cal.2d 685, 104 P.2d 650; British-American Tobacco Co., Ltd. v. British-American Cigar Stores Co., 2 Cir., 211 F. 933; Continental Distilling Sales Co. v. Brancato, 8 Cir., 173 F.2d 296
 
 
 [4]
 The Governor and Company of Adventurers of England Trading into Hudson's Bay v. Hudson Bay Fur Co., D.C., 33 F.2d 801, 802
 
 
 [5]
 Eastern-Columbia, Inc., v. Waldman, 30 Cal.2d 268, 271, 181 P.2d 865, 867
 
 
 [6]
 Phillips v. Governor and Company of Adventurers of England Trading into Hudson's Bay, 9 Cir., 79 F.2d 971
 Now there must be added to these facts that plaintiff has not attempted to monoplize the name "North American" in alien fields such as storage and truck transportation and others. The field of aviation has been invaded by defendants under cover of this name.
 
 
 [7]
 This factor alone would be sufficient to distinguish this case from previous cases in this Court. Sunbeam Lighting Co. v. Sunbeam Corporation, 9 Cir., 183 F.2d 969; Sunbeam Furniture Corporation v. Sunbeam Corporation, 9 Cir., 191 F.2d 141
 
 
 [8]
 See American Philatelic Society v. Claibourne, 3 Cal.2d 689, 698, 46 P.2d 135, 140, where it is said: "It is also to be borne in mind that the rules of unfair competition are based, not alone upon the protection of a property right existing in the complainants, but also upon the right of the public to protection from fraud and deceit."