**SAFEWAY STORES, INCORPORATED,**
a Maryland corporation, Plaintiff,

v.

**CHICKASHA COTTON OIL COMPANY,**
a Delaware corporation, Defendant.

**Civ. No. 8038.**

United States District Court
W. D. Oklahoma.

July 30, 1959.

Embry, Crowe, Tolbert, Boxley & Johnson, Oklahoma City, Okl., for plaintiff.

Cochran, Dudley, Fowler, Rucks, Baker & Jopling, Oklahoma City, Okl., for defendant.

CHANDLER, Chief Judge.

Plaintiff, Safeway Stores, Incorporated, a Maryland corporation, brought this action against the defendant, Chickasha Cotton Oil Company, a Delaware corporation, seeking to enjoin the defendant from registering "Save Way" and the design utilizing such name in the U. S. Patent Office as a trade-mark for poultry and livestock feeds and to permanently restrain and enjoin the defendant, its officers, agents, and employees from using the name "Save Way," or any similar name or designation similar to the word "Safeway," in the conduct of defendant's business. The jurisdiction of this court is invoked pursuant to Section 1121 of Title 15 U.S.C.A., and Section 1338(b) of Title 28 U.S.Code, and the amount in controversy, exclusive of interest and costs, exceeds $10,000.

Plaintiff, its predecessors and subsidiaries have since 1925 used the designation "Safeway" in commerce on a national basis as a trade name and trade-mark in its retail grocery business and in manufacturing and other related businesses. Since January 1, 1943, when plaintiff succeeded to all of the operations of its subsidiaries, it has operated its retail food stores under the trade name "Safeway." Its operations involve the purchase, manufacture, storage, warehousing, retail distribution of food and household products, including produce, meats, fish, poultry, frozen foods, dairy products, and other articles of general use in the household. It also retails canned and packaged pet foods, animal block salt, and at its store in Ardmore, Oklahoma, has sold animal feed since May 19, 1958.

As of December 31, 1958, plaintiff was operating 1,936 retail stores in twenty-six states of the United States and the District of Columbia, all under the name "Safeway." It has operated retail stores in Oklahoma and Texas since 1928 and 1929, respectively, and as of December 31, 1958, had seventy-nine stores in Oklahoma, and 156 stores in Texas.

Plaintiff's stock is listed on the national stock exchanges, and quotations are carried in newspapers throughout the nation under the name "Safeway."

Plaintiff is the owner of the trade-mark "Safeway" for meats and poultry under U. S. Patent Office Registration No. 645211 issued May 7, 1957, and owns

five other federal registrations of the mark "Safeway," all of which are valid. It also owns valid registrations of said mark in forty-two states.

The name "Safeway" is the distinguishing and dominant part of plaintiff's corporate name, and has always been prominently displayed in and about its stores and in its advertising. Plaintiff has spent large sums in advertising the name "Safeway" in newspapers, radio broadcasts, television broadcasts, and magazines, and through other media. Its net sales in Oklahoma and Texas alone for the past ten years have exceeded $1,700,000,000, and in 1958 amounted to $266,847,926.

The name "Safeway" has become generally known to refer to plaintiff and its stores and related activities and is well and favorably known to the public. The fair and reasonable value of the good will of plaintiff and its business and the name "Safeway" was fixed by the evidence at between $5,000,000 and $7,750,000 in Oklahoma and Texas alone.

Defendant was organized in 1919 and was for many years primarily engaged in the operation of cotton oil mills and a feed mill at Chickasha, Oklahoma, known as the Chic-O-Line Feed Mill, where it produced poultry and livestock feeds under the name "Chic-O-Line." In February, 1957, defendant changed the name of the Chic-O-Line Feed Mill at Chickasha, Oklahoma, to the name "Save Way" Feed Mill and began selling its feed products under the trade name "Save Way." At approximately the same time it initiated proceedings in the U. S. Patent Office to register the name "Save Way" as its trade-mark for poultry and livestock feeds. At the time defendant adopted this new trade name and initiated registration proceedings in the U. S. Patent Office, its principal officers and employees were well acquainted with the name "Safeway" and knew that it had been for many years widely advertised as plaintiff's trade name and was associated generally by the public with plaintiff and its business. Defendant's officers denied, however, any consideration or thought was given to the name "Safeway" when it adopted the name "Save Way." The principal reason advanced by defendant for adopting the new name was that it would better exemplify what defendant wanted to accomplish and what its feed would do.

On October 1, 1957, notice of defendant's application in the U. S. Patent Office was officially published, and plaintiff immediately filed notice of opposition. On October 22, 1957, plaintiff wrote defendant and demanded that it immediately discontinue using the designation "Save Way," or any other name confusingly similar to "Safeway," and that it withdraw its application for registration in the U. S. Patent Office. Plaintiff instituted this action on May 20, 1958.

To advertise the change of name from Chic-O-Line to "Save Way," defendant spent about one thousand dollars for two ads in a trade journal, wherein it stated it was introducing a great new feed, so new and so different that it would be sold in a brand new bag with a brand new name—"Save Way." Actually there was very little difference in the feed sold under the name "Chic-O-Line" and that subsequently sold under the name "Save Way," except that it did have a new name and was more expensive. Up until receipt of plaintiff's letter, wherein it was requested to refrain from further use of the name "Save Way," defendant spent approximately fourteen thousand dollars for other forms of advertising, but thereafter its advertising expenses were very small. As of the date of trial, defendant was still using the trade name "Save Way" as well as its old trade name "Chic-O-Line" and an additional trade name "Anchor Brand." The volume of its sales was about the same as it had been immediately prior to the adoption of the new trade name "Save Way," although defendant's sales force had been substantially decreased. The evidence showed that while defendant was formerly operating its feed business at a loss, at the time of trial it was realizing a profit,

and this was attributable at least in part to the adoption of this specific new name.

The law governing trade-marks and trade-mark infringement is but a part of the broader field of law governing unfair competition in the use of trade-marks and trade names. Both involve questions which look to similar principles for decision. The problem of course arises when a newcomer copies or simulates the trade name or mark of another. In determining whether the action of the newcomer is unlawful and therefore subject to be enjoined, the test adopted by practically all courts is whether or not the names are so similar as to probably or likely cause confusion in the minds of ordinary purchasers, and actual confusion need not be shown. Spice Islands Co. v. Spice Lands Products, Inc., D.C.N.Y., 165 F.Supp. 92; 2 Cir., 262 F. 2d 356; Abramson v. Coro, Inc., 5 Cir., 240 F.2d 854; Keller Products, Inc. v. Rubber Linings Corporation, 7 Cir., 213 F.2d 382, 47 A.L.R.2d 1108; LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115; Coalgate Abstract Co. v. Coal County Abstract Co., 180 Okl. 8, 67 P.2d 37; Churchill Downs Distilling Co. v. Churchhill Downs, Inc., 262 Ky. 567, 90 S.W.2d 1041.

It is generally recognized where there is such a similarity of names as would probably or likely produce confusion that lack of actual competition between the parties is no defense. Standard Oil Co. of New Mexico, Inc. v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973; Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 10 Cir., 95 F.2d 711; Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972; North American Aircoach Systems, Inc. v. North American Aviation, Inc., 9 Cir., 231 F.2d 205; Aetna Casualty and Surety Co. v. Aetna Auto Finance, Inc., 5 Cir., 123 F.2d 582; Wyatt Earp Enterprises, Inc. v. Sackman, Inc., D.C. N.Y., 157 F.Supp. 621; Academy of Motion Picture Arts and Sciences v. Benson, 15 Cal.2d 685, 104 P.2d 650; Bulova Watch Co., Inc. v. Stolzberg, D.C.Mass. 69 F.Supp. 543.

It is also well settled that coined or fanciful words, and those which have by long period of use acquired a secondary meaning, are entitled to and are given a much broader degree of protection than words in common use. Stork Restaurant, Inc. v. Sahati, 9 Cir., 166 F.2d 348; W. E. Kautenberg Co. v. Ekco Products Co., 251 F.2d 628, 45 CCPA 761; G. D. Searle & Co. v. Institutional Drug Distributors, Inc., D.C.Cal., 151 F.Supp. 715.

The ownership of a trade name is a property right, and especially so where the trade name embodies the distinctive part of the owner's corporate name. Stork Restaurant, Inc. v. Sahati, supra; Standard Oil Co. of New Mexico, Inc. v. Standard Oil Co. of California, supra. The fact that one may adopt or simulate the trade name of another without any fraudulent, illegal, or wrongful intent is immaterial. Safeway Stores, Inc. v. Rudner, 9 Cir., 246 F.2d 826; Stork Restaurant, Inc. v. Sahati, supra; Safeway Stores, Inc. v. Sklar, D.C.Pa., 75 F.Supp. 98. Equity frowns upon business methods by which a junior appropriator seeks to capitalize upon the good reputation of a senior appropriator of a trade name, and the fact that a junior appropriator had innumerable names to choose from without infringing upon the senior appropriator's trade name is a factor justifying injunction. Stork Restaurant, Inc. v. Sahati, supra; Triangle Publications, Inc. v. Rohrlich, 2 Cir., 167 F.2d 969.

Courts will generally look at the form, appearance, and spelling and take cognizance of the sound of trade names in determining whether or not there is a likelihood of confusion, absolute identity not being necessary, and the benefit of any doubt should be given to the first user. Telechron, Inc. v. Telicon Corp., 3 Cir., 198 F.2d 903; Safeway Stores, Inc. v. Suburban Foods, Inc., D.C.Va., 130 F.Supp. 249; Abramson v. Coro, Inc., supra; Lambert Pharmacal Co. v. Bolton Chemical Corp., D.C.N.Y., 219 F. 325; Spice Islands Co. v. Spice Lands Products, Inc., supra.

For approximately thirty-five years plaintiff has used the trade name "Safeway." This name has been registered by plaintiff as a valid, subsisting trade-mark in the U. S. Patent Office and in forty-two states. It is a coined or fanciful word, not to be found in any dictionary. To the plaintiff the trade-mark and trade name "Safeway" has become a valuable asset and property right, and the good will and reputation it bears has been independently earned through expenditure of time, effort, and money. As such, it is deserving of the highest degree of protection by the courts.

In determining whether the plaintiff is entitled to injunctive relief against the defendant, this court must decide whether or not the term "Save Way" is so similar to the term "Safeway" as to likely or probably cause confusion. From the facts presented in this case, this must be answered in the affirmative. On defendant's feed bags and signs the name "Save Way" is printed in large letters, and where the corporate name is shown it is in very fine print, distinguishable only at very close range. At times defendant blocks the two words "Save Way" on one line, and at other times two lines are used. The words are lettered in white on a red background, which scheme is also frequently used by plaintiff. The spelling "Safeway" and "Save Way" is almost identical. Both have the same number of letters, the only difference occurring in the middle of the name, which makes it difficult to distinguish the two terms. "Save Way" is phonetically an obvious confusion of "Safeway." If heard over radio or television, the two words would be almost indistinguishable.

While competition is not an essential element in a case of this nature, plaintiff and defendant are in competition in some respects. While plaintiff does not at the present time extensively sell animal feed, it is selling such feed through one of its stores, and may sell such feed at others in the future. Plaintiff also does a large and extensive business in the sale of pet feeds, which is closely akin to the feed business of defendant. The evidence also discloses that in 1957, within a few months after defendant adopted the trade name "Save Way," it acquired a chain of eighteen grocery stores, four of which are located in towns where the plaintiff also has stores. While defendant has not yet applied the trade name "Save Way" to its grocery stores, the possibility of such an occurrence cannot be ignored. Defendant's grocery stores are principally supplied by Kimball Wholesale Grocery Company, a large wholesale grocery chain primarily owned by Mr. Kay Kimball, a substantial stockholder and member of defendant's board of directors. Both parties operate in overlapping trade areas and do business with farm as well as town and city purchasers.

While it is not necessary to prove actual confusion in a case of this type in order to obtain relief, plaintiff did produce some evidence of actual confusion, which is strongly persuasive that there is a probability and likelihood that the continued use of the name "Save Way" by the defendant will result in further confusion and deceit of the general public so that many people might reasonably conclude that defendant's business is in some way connected with that of plaintiff or sponsored by plaintiff.

With an abundance of names to select from, there is no reason why the defendant should be permitted to simulate the plaintiff's trade name. Any doubt as to possible confusion should be resolved on behalf of plaintiff, and it should not be forced to run the risk of having its good name tarnished or diluted by one who could have easily avoided such controversy by selecting another name.

It is concluded that plaintiff is entitled to judgment enjoining the defendant from registering the name "Save Way" and the design utilizing such name in the U. S. Patent Office as a trade-mark or trade name for poultry and livestock feed, and further enjoining the defendant, its officers, agents, and employees from using, advertising, or attempting

to use the name "Save Way," or any similar name or designation, and from using any other name or designation similar to the word "Safeway" in the conduct of its business.