[Civ. No. 19174.   First Dist., Div. Two.   Nov. 22, 1960.]

MAE WEST, Appellant, v. MARIE LIND et al.,
Respondents.

Belli, Ashe & Gerry, Fendler & Lerner, Harold A. Fendler, Conroy & Conroy and Edward L. Conroy for Appellant.

Barnett & Robertson, Phillip Barnett, and William Bernstein for Respondents.

KAUFMAN, P. J.—This is an appeal from an order denying a preliminary injunction sought by the appellant, Mae West, to restrain the respondent, Marie Lind, from using the name "Diamond Lil" and the respondent, Gay 90's, a corporation, from billing and advertising the respondent, Marie Lind, as "Diamond Lil" or "The One and Only Diamond Lil." After the hearing on the order to show cause, at which oral and documentary evidence was introduced, the court found that the description "Diamond Lil" involved words of common usage in the public domain, which were not susceptible to appropriation to a given individual, and were not subject to appropriation by the appellant in the manner asserted by the appellant.

On appeal, it is argued that the trial court erred in the above mentioned finding and conclusion because: (1) The appellant has stated a cause of action in unfair competition, as the designation "Diamond Lil" has, over a long period of time, been associated exclusively with her; (2) the appellant has created a valuable property right in a character type; and (3) injunctive relief is proper in order to prevent the usurpation of the secondary meaning attained by the name "Diamond Lil" and to prevent the pirating, counterfeiting and imitation of the character "type" created by the appellant.

The record reveals the following: Appellant filed her complaint in this action on March 26, 1959, and obtained an order to show cause returnable on March 31, 1959. Appellant lives in Los Angeles, but because of her inability to appear, the hearing on the order to show cause was postponed for almost seven months, until October 16, 1959, coincidentally also the date of the appearance of appellant's new book.

The power to issue preliminary injunctions is an extraordinary one and should be exercised with great caution and only where it appears that sufficient cause for hasty action exists. (*Hueneme, etc. Ry.* v. *Fletcher,* 65 Cal.App. 698 [224 P. 774].) Appellant's demand for the extraordinary remedy is inconsistent with her delay and on this ground alone, we could affirm the exercise of the trial court's discretion in

denying the remedy sought. ▮ It is well established in this state that a trial court has broad discretion in passing upon a motion for a temporary injunction. It is not necessary that the ultimate rights of the parties be determined. (*City of Los Angeles* v. *Barrett*, 153 Cal.App.2d 776, 783 [315 P.2d 503].) ▮ On an appeal from the granting or denial of a preliminary injunction, not only is the trial court's determination of facts binding if supported by substantial evidence but a broad discretion is vested in the trial court as to the action to be taken upon the facts it finds. (*O'Shea* v. *Tile Layers Union*, 155 Cal.App.2d 373, 377 [318 P.2d 108].)

We turn now to the facts revealed by the record. The uncontroverted evidence indicated that throughout her entire career, the appellant had always been billed and publicized as "Mae West as Diamond Lil," or "Mae West and her own Revue," and similar designations. At no time was she ever publicized solely by the name "Diamond Lil." Appellant testified that she was famous as "Mae West" and that she had used other stage names in her career such as "The Baby Vamp," "The Siren of the Screen," "The Screen's Bad Girl," and "The Original Brinkley Girl." It was conceded that the appellant had written and copyrighted a book and stage play called "Diamond Lil" and toured extensively with the stage play. There was, however, no contention that the respondents were producing that play or any part of it or in any way infringing on the copyright.* She also testified that at the time she appeared in her play "Diamond Lil," the name "Mae West" always appeared on all advertisements, programs, billings, etc., and that she had never registered "Diamond Lil" as a stage name with the American Guild of Variety Artists of which she was a member.

The uncontroverted evidence indicated that the respondent, Marie Lind, on entering show business had registered "Diamond Lil" as her stage name with A.G.V.A. and had used that name for several years, and that the appellant knew of this use. Marie Lind testified that she had used the name based on the clearance of A.G.V.A., and because the name was in the public domain as there had been other and earlier "Diamond Lils." The respondent, Goman, stated that when he employed Marie Lind under the name of "Diamond Lil,"

---

*Cf. *Paramore* v. *Mack Sennett, Inc.* (C.C.A. 5, 1925), 9 F.2d 66, where the author and copyright holder of a poem entitled "The Ballad of Yukon Jake" obtained damages for the infringement of his copyright from the defendant who made, distributed, and caused to be exhibited a motion picture entitled "Yukon Jake."

he did not think there was a claim to the name as it had been used for many years in show business.

Appellant relying on *Academy of Motion Picture Arts & Sciences* v. *Benson,* 15 Cal.2d 685 [104 P.2d 650], argues that she is entitled to relief under subsection 2 of section 3369 of the Civil Code as the public identifies "Diamond Lil" exclusively with her.

The relevant statute section provides: "Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction." ▮ Under this section, it has been held that while generic terms and words descriptive of place are not subject to exclusive appropriation, if a plaintiff proves that the name or word has been so exclusively identified with his goods or business as to have acquired a secondary meaning which indicates his goods or business and his alone, he is entitled to relief against another's deceptive use of such terms. (*Academy of Motion Picture Arts & Sciences* v. *Benson, supra.*) ▮ Whether or not a party had acquired a right to the exclusive use of a name, depends on its use in relation to goods, business or service to the point where the public identifies the name with a particular individual or entity. (*North American Air Coach Systems, Inc.* v. *North American Aviation, Inc.* (C.C.A. 9, 1955), 231 F.2d 205, 210.)

▮ Whether or not a designation has acquired a "secondary meaning" is a question of fact in each case. (*Beverly Hills Hotel Corp.* v. *Hilton Hotels Corp.*, 134 Cal.App.2d 345, 350 [285 P.2d 1012]; 3 Restatement, Torts, § 716(b).) ▮ The very authority cited by the appellant indicates that the ultimate test of conduct in constituting unfair competition under the code section is *whether the public is deceived.* (*Academy of Motion Picture Arts & Sciences* v. *Benson, supra*; *MacSweeney Enterprises, Inc.* v. *Tarantino,* 106 Cal.App.2d 504 [235 P.2d 266].) ▮ Here, the appellant admitted that Marie Lind did not look like her and that there was no resemblance between them. Appellant also admitted that a life preserver named after her was always known as a "Mae West" jacket, never as a "Diamond Lil" jacket. The only evidence before the trial court that anyone who saw the billings for Marie Lind at the Gay 90's was deceived, was the testimony of a public relations man for the appellant. One of the respondents, Mrs. Goman, testified that no other patrons had complained that after seeing the advertisements for "The One and Only Diamond Lil," they had expected to see the

appellant. Respondent, Ray Goman, testified that he booked Miss Lind because the name "Diamond Lil" was reminiscent of the Gay 90's and fitted in with the general programming of his "Gay 90's" club. From the above, it is clear that there is substantial evidence to support the findings and conclusions of the trial court.

Appellant, relying on *Chaplin* v. *Amador,* 93 Cal.App. 358 [269 P. 544], next argues that because of her impersonation of a character named "Diamond Lil," over a long period of years, she has created a "type" associated with her and that her property right in this type is entitled to protection. In the Chaplin case, the court found that Charles S. Chaplin had created and perfected a peculiar type of character on the motion picture screen, and allowed injunctive relief when another actor sought not only to imitate the character but the role, garb, mannerisms and the name, Charles Aplin. The court, however, pointed out at page 363:

". . . The case of plaintiff does not depend on his right to the exclusive use of the role, garb, and mannerisms, etc.; it is based upon *fraud and deception.* The right of action in such a case arises from the *fraudulent purpose and conduct of appellant and injury caused to the plaintiff thereby, and the deception to the public,* and it exists independently of the law regulating trademarks, or of the ownership of such trademarks or trade names by plaintiff. It is plaintiff's right to be protected against those who would injure him by fraudulent means; that is, by counterfeiting his role—or, in other words, plaintiff has the right to be protected against 'unfair competition in business.' "

The instant case does not fall within the rule as there was no evidence that the respondent, Marie Lind, was imitating the appellant or that the respondent, "Gay 90's," was deceiving the public.

Appellant argues, however, that under the modern view the doctrine of unfair competition has not been limited but has been extended to grant relief where there has been no fraud on the public but a misappropriation for the commercial advantage of one person of a benefit or a property right belonging to another. (*Waring* v. *WDAS Broadcasting Station* (1937), 327 Pa. 433 [194 A. 631]; *Ettore* v. *Philco Television Broadcasting Corp.* (C.C.A. 3, 1956), 229 F.2d 481.) As pointed out in the Ettore case, *supra,* page 487, where a professional performer is involved, there seems to be a recognition of a kind of property right in the performer to the product of his

services. (*Cf.* Prosser, Torts (2d ed. 1955), § 97, pp. 639-640.) In recent years, courts have given greater recognition to the particular property rights of celebrities and professional performers even when there is no direct competition between the parties. For example, in *Sullivan* v. *Sullivan Radio & T.V.* (S.Ct. N.Y., 1956), 1 App. Div. 2d 609 [152 N.Y.S.2d 227], the court granted an injunction to a nationally famous television and radio personality against the use of "Ed" by a recently incorporated "Ed Sullivan Radio & TV Inc.," whose president and chief stockholder was one Edward J. Sullivan and which sells and repairs radio and television sets in one city. (See also 33 So. Calif. L. Rev. pp. 55-60 and cases discussed therein at pp. 57-58.) In *Dior* v. *Milton* (1956), 155 N.Y.S.2d 443, aff'd 2 App.Div.2d 878 [156 N.Y.S.2d 996], wherein the court said at page 455: "The modern view as to the law of unfair competition does not rest solely on the ground of direct competitive injury, but on the broader principle that property rights of commercial value are to be and will be protected from . . . any form of commercial immorality. . . ."

However, we have not found any cases in this state which have been decided on similar grounds, so at best, we can only say that in this state, appellant's argument is a doubtful one.

■ It has long been the law that "to issue an injunction is the exercise of a delicate power requiring great caution and sound discretion, and rarely, if ever, should be exercised in a doubtful case." (*Willis* v. *Lauridson,* 161 Cal. 106, 117 [118 P. 530].) "The right must be clear, the injury impending and threatened so as to be averted only by the protective preventive process of injunction." (*St. Louis Street F. M. Co.* v. *Sanitary Street F. M. Co.* (C.C.A. 8, 1908), 161 F. 725, 728 [88 C.C.A. 585].) ■ We think the appellant's "property right" in the type of "Diamond Lil" in the instant case, was extremely doubtful, both on the evidence and the law of this state. Rather, the case is somewhat like *Funkhouser* v. *Loew's, Inc.* (C.C.A. 8, 1953), 208 F.2d 185, where one of the grounds of the alleged plagiarism and infringement was the fact that the defendant's motion picture had a similar western background and incidents as the plaintiff's copyrighted work. In affirming the trial court's conclusion that the similarities were due to the nature of the subject matter and not to copying, the appellate court said at page 188: "It would be novel indeed, though perhaps not particularly satisfying, to view a motion picture portrayal of the old west without such traditional western type towns, false-fronted

buildings, hitching posts, etc.'' Similarly in the instant case, the respondent's use of the name and billing of ''Diamond Lil'' which had been previously used by the appellant was due to the nature of the subject matter which the trial court correctly concluded to be in the public domain.

We conclude that the record discloses no abuse of discretion on the part of the trial court and that the order finds ample support in the record before us.

Order affirmed.

Draper, J., and Shoemaker, J., concurred.

A petition for a rehearing was denied December 22, 1960, and appellant's petition for a hearing by the Supreme Court was denied January 18, 1961.

