**PHILAD CO. et al. v. MURRAY'S BEAUTY SALON et al.**

No. 850.

District Court, S. D. Ohio, W. D.

Nov. 7, 1935.

Walter W. Schwaab, of Cincinnati, Ohio, Morris Kirschstein, of New York City, and T. Paul Titus, of Cleveland, Ohio, for plaintiffs.

Carl W. Frey, of Cincinnati, Ohio, and Maurice S. Cayne, of Chicago, Ill., for defendants.

NEVIN, District Judge.

Patent Infringement.

This is a suit under the patent laws of the United States. At the time the bill of complaint was filed, plaintiff, the Philad Company, was a corporation organized and existing under the laws of the state of Ohio. On or about December 24, 1934, the Ohio corporation transferred all of its assets, including the patent in suit, to the

Philad Company, a corporation of the state of Delaware, and on the 5th day of March, 1935, an order was entered in this cause substituting the Philad Company of Delaware as party plaintiff for the Philad Company of Ohio. The plaintiff, the Realistic Permanent Wave Machine Company, is a corporation under the laws of the state of Ohio. It is a licensee under the patent in suit and manufactures various equipment, accessories, and supplies for practicing the method of Croquignole waving covered by the patent in suit. Since the commencement of this suit, the defendant, Murray Kane, caused Murray's Beauty Salon to be incorporated under the laws of the state of Ohio, under the name of Murray's Beauty Salon.

The patent in suit is reissue patent No. 18,841, applied for March 20, 1933, and granted to Josef Mayer, assignor to the Philad Company of Ohio, May 30, 1933. The patent is for "Hair Waving Method" and is a reissue of reissue patent No. 17,393 of original patent No. 1,622,957, for "Hair-Waving Appliance and Method," granted Mayer March 29, 1927. The original application was filed March 19, 1925. Application for reissue was filed March 11, 1929, and reissue patent No. 17,393 was granted August 6, 1929. Reissue patent No. 17,393 was for "Hair-Waving Appliance and Method."

Plaintiffs filed their bill of complaint in this court on February 23, 1933, charging defendants with infringement and/or contributory infringement of reissue patent No. 17,393. The bill of complaint also charges defendants with trade-mark infringement and unfair competition. The cause of action for trade-mark infringement and unfair competition is based upon ownership of the trade-mark and trade-name "Realistic" as applied to equipment, accessories and supplies used in practicing the hair waving process of the patent in suit, and upon the alleged good will established in the trade-mark and trade-name in connection with plaintiffs' business in said devices; also upon the association in the trade and public mind of the word "Realistic" with permanent waves of the so-called Croquignole type given with the Realistic equipment, accessories, and supplies. Based upon the allegations of the bill, plaintiffs pray for an injunction, both temporary and permanent, for an accounting, and for treble damages for alleged willful, unjust, and unfair infringement by the defendants.

On April 7, 1933, defendants filed an answer denying infringement and denying the validity of the claims of reissue patent No. 17,393, and averring "that said Reissue Letters Patent No. 17,393 were issued by the United States Patent Office without due investigation"; denying further any trade-mark infringement or unfair competition.

Reissue patent No. 17,393 contained claims both for the process (claims 2 and 8 to 10) and for apparatus used in carrying out the process. This reissue patent (No. 17,393) was adjudicated as valid and infringed as to claims 1, 5, 7, 8, and 9 by the District Court for the Northern District of Ohio, Eastern Division, in the case of the Philad Company and the Realistic Permanent Wave Machine Company v. The Herold Bros. Company. On appeal, the Circuit Court of Appeals for the Sixth Circuit affirmed the decision of the District Court as to the process claims 9 and 10 of said reissue patent No. 17,393, and reversed the judgment of the District Court as to the article (clamp) claims which were held invalid. Naivette v. Bishinger, 61 F.(2d) 433. After the mandate issued by the Circuit Court of Appeals was filed, by reason of the holding of the invalidity of the article claims of reissue patent No. 17,393, a reissue application was filed which eliminated the claims held invalid and included the process claims which were held valid and other process claims and more specific article claims. This reissue application was thereafter divided into two applications, one for the process and the other for the apparatus. The patent in suit, reissue patent No. 18,841, resulted from the divisional process application and was set up by supplemental bill.

The supplemental bill, just referred to, was filed June 13, 1933. In it, it is alleged inter alia, that letters patent No. 18,841 (patent in suit) contain the claims which were held valid by the United States Circuit Court of Appeals for the Sixth Circuit, and that the Philad Company is the owner of the entire right, title, and interest in and to said letters patent.

On July 7, 1933, an answer to this supplemental bill was filed again denying infringement. On June 23, 1933, a motion was filed for preliminary injunction and an order granting a preliminary injunction was entered on December 11, 1933. Sub-

sequently, on March 1, 1934, and for some days thereafter, the cause came on for hearing before the court. The evidence adduced was by way of oral testimony and exhibits. The record is somewhat voluminous. Exhaustive briefs have been filed.

The patent in suit contains six claims —of these, only claims 3, 4, and 5 are relied upon. It relates to permanent waving of hair on the human head. In the waving of hair, whether in the making of artificial hair pieces or on the human head, the hair has first to be wound. Two types of winding are employed. One is known as the spiral (or spindle) type, and the other, Croquignole. In the spiral type the hair is wound helically on a spindle in cork screw fashion, the operator commencing at the scalp and winding along the spindle or rod out to the ends of the hair strands. In the Croquignole type the hair is wound from the ends of the hair strands towards the scalp in overlying, substantially circular layers, turn upon turn.

It is claimed by defendants that claims 3, 4, and 5 of the patent in suit are invalid as reissue claims by reason of the fact, as defendants submit, that a claim substantially the same as the claims of the reissue patent in suit was presented in the original application for patent, was rejected by the Examiner on the prior art, the rejection was acquiesced in by the applicant and the claim cancelled. Defendants further submit that the claims are invalid because they are lacking in invention, and finally because the alleged invention was not that of the patentee Mayer, but was in public use before his date of invention and more than two years before the original patent in suit was filed.

Claims 3, 4, and 5 of the patent in suit read as follows:

"3. The process of waving hair upon the human head which comprises dividing the hair into flat strands, gripping one strand adjacent the scalp of the wearer with a clamp, winding said strand spirally from its end to near said clamp upon a rod, covering said strand with absorbent material containing hair treating solution, next covering said strand and material with a moisture retaining envelope, and then applying heat to said strand.

"4. The process of waving hair upon the human head which comprises dividing the hair into flat strands, surrounding one strand adjacent the scalp of the wearer with a clamp, winding said strand from its end to near said clamp upon a rod, treating said strand with a solution and enclosing the strand in a substantially moisture-tight envelope, covering said envelope with a sectional heater extending to said clamp, and then causing said heater to apply heat to said strand.

"5. The process of waving hair upon the human head which comprises gripping a flat strand of hair adjacent to the scalp with a moisture-tight clamp, winding said strand spirally from its end upon a rod nearly to said clamp, enclosing said strand together with moisture in a moisture retaining envelope, enclosing said strand and envelope within a heater extending about the same to the clamp, and then causing the heater to supply heat to the strand."

The foregoing claims 4 and 5 are identical with claims 9 and 10 of reissue patent No. 17,393, which were held valid by the Circuit Court of Appeals of this (Sixth) Circuit, in Naivette, Inc., v. Bishinger et al. (Herold Bros. Co. v. Philad Co. et al.), 61 F.(2d) 433. Claim 3, above quoted, of the patent in suit was claim 8 of reissue patent No. 17,393. The subject-matter of this claim is of the same general nature as claims 4 and 5. It would serve no useful purpose to discuss these claims in detail or the history of the art of waving hair, as both have already been fully covered by the Circuit Court of Appeals in the decision just referred to.

The court is of the opinion that there is no merit in the contention of defendants that claims 3, 4, and 5 of reissue patent No. 18,841, which were claims 8, 9, and 10, respectively, of reissue patent No. 17,393, cover the same subject-matter as claim 1, which was canceled from the application which resulted in the original patent No. 1,622,957. This defense is not raised for the first time here. As pointed out by counsel for plaintiffs in their brief, it was urged, considered, and overruled in Naivette, Inc., v. Bishinger et al. and Herold Bros. Co. v. Philad et al., both in the District Court and in this Circuit Court of Appeals. Plaintiffs' Exhibit No. 132 (P. 2) Petition for Rehearing of Case No. 5,946 (C.C.A.6).

During the progress of the trial, an alleged prior use by one Hannah Jacobs was brought to the attention of the court by an amendment to the pleadings. Defendants submit that the defense based upon the prior use by Mrs. Jacobs and others

was not before the Circuit Court of Appeals in the Herold Bros. Company Case, because defendants allege this prior use had not been located until some time after the opinion was rendered by the Court of Appeals in the case just referred to.

■ Again, the court is of the opinion that no useful purpose would be served in discussing at great length (as has been done in the briefs of counsel) the testimony regarding this claimed use on the part of Mrs. Jacobs. The burden of proof of this prior use is upon the defendants.

Upon a full consideration of all of the testimony in this connection, the court not only is not convinced beyond a reasonable doubt, but is of the opinion that the testimony is wholly insufficient to establish the prior use by any such testimony as would justify a finding in favor of defendants. As to the prior art patents, the court is in accord with the views as expressed by counsel for plaintiffs, that the most pertinent prior art patents relied on by defendants were fully considered by the Circuit Court of Appeals, and the other patents and publication relied on here which were not before that court are obviously even less pertinent. The views of the court in these and all other respects are sufficiently set forth in its findings of fact and conclusions of law.

It is conceded in their brief (P. 158) by counsel for the defendants that if claims 3, 4, and 5 are valid, "the same are probably infringed." The proof of infringement is ample. There does not seem to be any serious contention, therefore, as to infringement once the validity of the claims has been established.

■ The court is of the opinion and so finds that claims 3, 4, and 5 of reissue patent No. 18,841 are valid, and that they have been infringed by defendants. Plaintiffs' cause of action for patent infringement is sustained.

### Trade-mark Infringement.

On January 14, 1926, Josef Mayer, a citizen of Czechoslovakia, applied to the Patent Office of the United States for the registration, in accordance with the Act of February 20, 1905, as amended, of the word "Realistic" as a trade-mark, stating that this trade-mark had been registered on December 16, 1924, in Czechoslovakia, and that it had been continuously used and applied to the goods in applicant's business since December 1, 1924, and that

"The trade-mark is usually applied or affixed to the goods, or to the packages containing the same, by means of labels having the mark printed thereon, or by stamping such trade-mark into the material."

When Mr. Kietz obtained the agency for the United States from Mayer, he was also given the right to use the trade-mark "Realistic" in connection with machines, accessories, and supplies.

On October 20, 1931, Mayer assigned and transferred all his right, title, and interest in and to this trade-mark and the registration thereof, together with the good will of the business in connection with which the trade-mark was used, to the Realistic Permanent Wave Machine Company of Ohio. Subsequently, the Realistic Permanent Wave Machine Company obtained several United States trade-mark registrations of the word "Realistic."

Defendants claim that "Realistic" is a descriptive word; that it merely describes a quality and appearance of the wave and that the trade-mark registrations relied on, therefore, are invalid. Defendants further urge that the business of defendants is not the business of manufacturing or selling articles of commerce, but merely that of rendering a service, and that therefore defendants cannot infringe upon a trade-mark which defendants claim must be applied to an article of commerce in order to be valid.

The court does not deem it necessary, in view of its conclusion as to this branch of the case, to discuss the latter claim in connection with trade-mark infringement.

Plaintiffs urge that the word "Realistic" is not descriptive, and that the evidence in this case shows that the name "Realistic" means a Croquignole wave given by the original and only process that was ever practically used for the purpose, namely, the patented process and with machines, accessories, and supplies manufactured by the Realistic Company.

The court cannot agree with the claim advanced by counsel for plaintiffs (Brief P. 90) "that Croquignole waving was identified with the name Realistic, and for a time Croquignole meant Realistic and Realistic meant Croquignole." As stated by the Court of Appeals in the Herold Bros. Company Case, 61 F.(2d) 433, at page 435: "Croquignole waving was old in the art of wig making, and was disclosed in numerous patents dealing with

the waving of hair upon the human head." The evidence does not disclose any substantial basis for a claim that Realistic was understood as or meant Croquignole waving. In its opinion, just referred to, the Court of Appeals state that at most all that Mayer could claim is that his patent "disclosed merely an improvement in the art of Croquignole waving," and so at most Realistic could never have meant more (if that) than such an improvement.

■ The court is of the opinion that the word or name "Realistic" is substantially descriptive, and that the trade-mark registrations relied upon are invalid. Vogue Co. v. Vogue Hat Co. (C.C.A.) 6 F.(2d) 875, 876.

In Bliss, etc., Co. v. Aileen Mills, Inc. (C.C.A.4) 25 F.(2d) 370, at page 371, the court say: "The difficulty with the plaintiffs' case is that the word 'Ripplette,' although somewhat arbitrary in spelling, is nevertheless so descriptive of the appearance of the goods as to be incapable of appropriation as a valid trade-mark, either under the Federal Trade-Mark Act, 33 Stat. 725 (15 U.S.C.A. § 85), or at common law." Certainly the case at bar is much stronger in favor of defendants' position than the one just cited.

In Mirrolike Mfg. Co. v. Defoe, etc., Co. (D.C.) 3 F.(2d) 846, affirmed (C.C. A.) 3 F.(2d) 847, the court say: "Mirrolike is more than suggestive; it is in my judgment 'merely descriptive.' Therefore under the statute it is bad."

To the same effect, see Sleight Metallic Ink Co. v. Marks (D.C.) 52 F.(2d) 664; Wagner's Sons Co. v. Orange Snap Co., 18 F.(2d) 554 (C.C.A.5); Black Bros. Flour Mills v. Dennie, 58 App.D.C. 233, 26 F.(2d) 1011; Wornova Mfg. Co. v. McCawley Co., 11 F.(2d) 465 (C.C.A.2).

Adopting the language of the court in the Mirrolike Case, above referred to, it is the judgment of this court that the word "Realistic" is "merely descriptive" and therefore, under the statute, bad.

### Unfair Competition.

Plaintiffs claim that even if the word "Realistic" is merely descriptive and the trade-mark invalid, nevertheless plaintiffs are entitled to relief against unfair competition under the facts and circumstances in this case; that the process which is the subject-matter of the patent in suit, is known by the public generally as "Realistic," and that it is so known and identified by the trade; that the law of unfair competition is much broader than that of technical trade-mark infringement. Plaintiffs submit that if the effect of defendants' act is to palm off or cause to be palmed off their goods as that of plaintiffs' goods, or to deceive the public into the belief that defendants' business is that of plaintiffs' business, or that defendants are in some way connected with plaintiffs, the court should take proper steps to prevent any fraud or likely fraud upon the public as well as upon the plaintiffs. Fuller v. Huff, 104 F. 141, 51 L.R.A. 332 (C.C.A.2).

■ The proof shows that the process covered by the patent in suit is known both by the public generally and by the trade as Realistic. It is true also, as claimed by plaintiffs, that the word "Realistic" is the dominant feature of the corporate title of the plaintiff, the Realistic Permanent Wave Machine Company. The evidence clearly shows that due to its advertising, not only by way of newspapers, magazines, and trade journals, but by the employment of a large number of demonstrators and salesmen, the name "Realistic," as counsel state, maintains the status "as denoting and being associated in the public mind with a Croquignole wave given with Realistic machines, Realistic protector clamps, Realistic heaters, Realistic tripads, and Realistic solution"—articles manufactured and sold by the Realistic Permanent Wave Machine Company. To the extent indicated, the name or word "Realistic" has acquired a secondary meaning.

To the extent that defendants attempt to or do palm off any such or kindred articles or devices as the product of the plaintiff, the Realistic Permanent Wave Machine Company, when such articles or devices are not in truth and in fact the product of said company, or attempt in any manner, either by use of the process covered by the patent in suit, or otherwise, to indicate that defendants' business is connected with plaintiffs, if in truth and in fact it is not, defendants are guilty of unfair competition, and to that extent plaintiffs are entitled to an injunction preventing such unfair competition. Defendants have the legal right to use the word "Realistic," provided always it is used in a descriptive sense; if used in any manner other than in a descriptive sense, its use must always be accompanied by some suitable designa-

tion or legend clearly indicating that it is not being used by defendants, and that defendants do not mean to imply that defendants (unless it be true), in giving a wave are doing so by the process which is the subject-matter of the patent in suit, or with the appliances, devices, and/or solutions manufactured and sold by the Realistic Permanent Wave Machine Company. Nor should pads or other devices be made (or, if made by others, used) by defendants in similitude of those manufactured and sold by the Realistic Permanent Wave Machine Company, if the word "Realistic" is used in connection therewith or thereon, unless it is clearly indicated by suitable designation that such pads or devices are not the product of the Realistic Permanent Wave Machine Company, nor held out as such. Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 673, 674, 21 S.Ct. 270, 45 L.Ed. 365.

The qualifying words which the record shows in this case were used by defendants as such a designation or legend are not, in the opinion of the court, in the light of all of the evidence, sufficient to prevent that "palming off" which the law endeavors to prevent. "In the instance of a lawfully registered trademark, the fact of its use by another creates a cause of action. In the instance of the use in bad faith of a sign not in itself susceptible of being a valid trademark, but so employed as to have acquired a secondary meaning, the whole matter lies in pais." Elgin National Watch Co. v. Illinois Watch Case Co., supra, 179 U.S. 665, at page 677, 21 S.Ct. 270, 275, 45 L.Ed. 365.

In Vogue Co. v. Thompson-Hudson Co. (C.C.A.6) 300 F. 509, at page 512, the court say: "For the purpose of this opinion, but without intimating a decision, we assume that relief could not be given under the law of technical trade-marks. * * * We come, then, to what is called 'unfair competition.' This is nothing but a convenient name for the doctrine that no one should be allowed to sell his goods as those of another."

In Howe Scale Co. v. Wyckoff, etc., 198 U.S. 118, at page 140, 25 S.Ct. 609, 614, 49 L.Ed. 972, the court say: "The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another."

While in the instant case it is claimed on behalf of defendants, as hereinbefore set out, that defendants are not in the business of manufacturing or selling articles of commerce, but merely rendering a service, we think this is immaterial in considering the question of unfair competition. Vogue Co. v. Thompson-Hudson Co., supra.

Summarizing, it is the view of the court that plaintiffs are entitled to an injunction because of patent infringement, and, in connection therewith and for the other reasons stated (to the extent indicated), an injunction to prevent unfair competition. The court is further of the opinion that plaintiffs are not entitled to treble damages as prayed for; nor are plaintiffs entitled to any profits or damages on account of unfair competition up to this time. The relief granted plaintiffs will be the issue of the injunctions referred to, an accounting for patent infringement and the recovery of their costs. Vogue Co. v. Thompson-Hudson Co., supra, 300 F. 509, at pages 512, 513.