**SAFEWAY STORES, INCORPORATED,**
**Plaintiff-Appellee,**

v.

**SAFEWAY PROPERTIES, INC.,**
**Defendant-Appellant.**

**No. 27307.**

United States Court of Appeals
Second Circuit.

Argued Feb. 7, 1962.

Decided Aug. 14, 1962.

Hays, Circuit Judge, dissented.

496

Fennelly, Douglas, Eagan, Nager &
Voorhees, New York City (William P.
Lage, Charles J. Nager, New York City,
of counsel), for plaintiff-appellee.

Fried, Beck, Tannenbaum, Ruggieri &
Field, New York City (David Halperin,
New York City, of counsel and on the
brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and
WATERMAN and HAYS, Circuit
Judges.

WATERMAN, Circuit Judge.

This is an appeal from an order entered in the United States District Court for the Southern District of New York granting a preliminary injunction which restrained the defendant from using the name "Safeway" in connection with its business.

The plaintiff-appellee, a Maryland corporation, is the second largest national food chain. It has approximately 2,000 stores in 30 states, including the New York City metropolitan area, and the District of Columbia. It has 200 additional stores in Canada operated by its Canadian subsidiary. The plaintiff's annual sales are in excess of two billion dollars. It and its predecessors have used the name "Safeway" in various parts of the United States continuously since 1925; and since 1941 have used this name on a national basis as a trademark in operating retail food stores and in manufacturing, processing, warehousing, and transporting food and non-food products. The plaintiff has for many years been the registered holder of the trademark "Safeway" under several federal and state registrations presently in effect.

As an adjunct of its supermarket business, the plaintiff has for some years purchased, sold, and leased real estate, and constructed offices, distribution centers, retail stores, and other facilities. It annually participates in more than 200 real estate transactions involving property valued in excess of $100,000,000. It owns and holds for sale surplus real estate valued at approximately $10,000,000. The plaintiff and its Canadian subsidiary carry on real estate activities in all twenty-five of their Retail Divisions through real estate or property departments headed by "property managers." These departments are frequently separately listed in telephone directories.

The defendant, a New York corporation, incorporated in August 1960 under the name "Safeway Properties, Inc.," sought to engage in real estate transactions on a nationwide basis, but with predominant emphasis in the New York metropolitan area. Apparently one of its chief interests was to erect shopping centers near airports.

About November 30, 1960, shortly after the plaintiff first knew of defendant's use of "Safeway" in its title, the plaintiff made a written demand upon the defendant to cease such use. Although the defendant's president admitted that he knew of the plaintiff's activities in the real estate field, the defendant refused to change its corporate name. Therefore the plaintiff brought the present action, claiming infringement of its trademark under the Lanham Act, 60 Stat. 427 (1946), 15 U.S.C.A. §§ 1051–1127, and alleging unfair competition. The plaintiff moved for a preliminary injunction restraining the defendant from using "Safeway" in connection with its business. The court granted the injunction, and the defendant appealed to this court.

██ The single issue which divides the parties is whether the plaintiff's use of the term "Safeway" as a trademark entitles it to a preliminary injunction against the defendant's use of the same term in the conduct of defendant's business. The keystone in that portion of the law of unfair competition which relates to trademarks is the avoidance of confusion in the minds of the buying public.[1]

---

1. It is the well-established rule today that the law of trademarks is a part of the larger field of unfair competition. Dell Pub. Co. v. Stanley Publications, Inc., 9 N.Y.2d 126, 211 N.Y.S.2d 393, 172 N.E.2d 656 (1961); 3 Callman, Unfair Competition and Trade-Marks § 67.1 (2d ed. 1950), and cases there cited. Since the relief granted below can be predicated upon the common law right to a trademark, we will not consider the alternative theory deriving from the Lanham Act. Furthermore, we will not pause to discuss whether the present case is governed by federal or New York law, since we perceive no difference in the relevant principles under either body of law. Accordingly, we draw on precedents from both sources. See generally Maternally Yours, Inc. v. Your Maternity Shop, 2 Cir., 234 F.2d 538, 540 n. 1, 545 (1956).

**498**

Judge Learned Hand expressed this principle well in his oft-quoted opinion in Yale Elec. Corp. v. Robertson, 26 F.2d 972, 973, 974 (2 Cir. 1928):

"The law of unfair trade comes down very nearly to this—as judges have repeated again and again—that one merchant shall not divert customers from another by representing what he sells as emanating from the second. This has been, and perhaps even more now is, the whole Law and the Prophets on the subject, though it assumes many guises. Therefore it was at first a debatable point whether a merchant's good will, indicated by his mark, could extend beyond such goods as he sold. How could he lose bargains which he had no means to fill? What harm did it do a chewing gum maker to have an ironmonger use his trademark? The law often ignores the nicer sensibilities.

"However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful.

The district court based its order granting the preliminary injunction on a finding that confusion did exist in the real estate field as a result of the use of the name "Safeway" by both parties in their corporate titles. The affidavits upon which the district court relied supported this conclusion. For example, there was an affidavit that persons telephoned the plaintiff in the belief that the defendant and the plaintiff were affiliated. In the usual case, a prior use of a trademark gives one a superior right to continue its use. 3 Callman, Unfair Competition and Trade-Marks § 76.1 (2d ed. 1950). Since the plaintiff was the prior user of the term "Safeway" both in the retail grocery business and in the real estate business, we should recognize, until full hearing on the merits, its apparent right to the use of that name as superior to the defendant's right.[2]

In spite of this confusion, the defendant maintains that it is entitled to use "Safeway" in its corporate title because the term is a descriptive word instead of a coined or fanciful one. In the present context words which pertain to any feature of an article or establishment, such as its purpose or function, and are not considered by the public as words of identification are considered to be words of description. See In re W. A. Sheaffer Pen Co., 158 F.2d 390, 391, 34 CCPA 771 (1946). Descriptive words receive less protection under the law of trademarks than fanciful or coined words because words in our general vocabulary which all can use to describe products or services should not be unduly limited. Telechron, Inc. v. Telicon Corp., 198 F.2d 903 (3 Cir. 1952).

If a descriptive word has taken on a secondary meaning, however, courts will afford equitable protection to

**2.** Since the relief granted below is supportable on the theory that the public should not be confused by a similarity of corporate names, we need not consider in the present case whether it is also supportable on the theory of dilution of

one's trademark, which theory several authorities advocate. 3 Callman, op. cit. supra § 84.2; 84.2(a); Schechter, The Rational Basis of Trademark Protection, 40 Harv.L.Rev 812 (1927).

the party whose use of the word has created the secondary meaning. See Maternally Yours, Inc. v. Your Maternity Shop, 234 F.2d 538 (2 Cir. 1956). If because of association with a particular product or firm over a period of time a word has come to stand in the minds of the public as a name or identification for that product or firm, the word is said to have acquired a secondary meaning. See 3 Restatement, Torts § 716(b) and comment b (1934); Richmond Remedies Co. v. Dr. Miles Medical Co., 16 F.2d 598, 602 (8 Cir. 1926); Schwartz v. Television Center, 89 U.S.App.D.C. 30, 189 F. 2d 691 (1951); Triangle Publications, Inc. v. Central Pub. Co., 117 F.Supp. 824, 827 (W.D.Mo.1954). Cf. Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 673–674, 21 S.Ct. 270, 45 L.Ed. 365 (1901). There can be little doubt but that the term "Safeway" in the retail grocery business has become identified with the plaintiff in the public mind. Safeway Stores, Inc. v. Safeway Const. Co., 74 F.Supp. 455 (S.D.Cal. 1947); Safeway Stores, Inc. v. Dunnell, 172 F.2d 649 (9 Cir.), cert. denied, 337 U.S. 907, 69 S.Ct. 1049, 93 L.Ed. 1719 (1949); Safeway Stores, Inc. v. Suburban Foods, Inc., 130 F.Supp. 249 (E.D. Va.1955); cf. Safeway Stores, Inc. v. Sklar, 75 F.Supp. 98 (E.D.Pa.1947); see also Safeway Stores, Inc. v. Rudner, 246 F.2d 826 (9 Cir. 1957); Safeway Stores, Inc. v. Chickasha Cotton Oil Co., 180 F.Supp. 534 (W.D.Okl.1959). This being so, we need not consider whether the term, as originally used, was descriptive or fanciful. See Safeway Stores, Inc. v. Chickasha Cotton Oil Co., supra. See generally 1 Nims, Unfair Competition and Trade-Marks 168 (4th ed.)

Thus the ultimate question to be decided in this litigation is whether the public's identification of the plaintiff with the term "Safeway" in the retail grocery business entitles the plaintiff to an injunction against the defendant's use of the same name in the real estate business. Many cases have made it clear that direct competition between the parties is not necessary to enable the plaintiff to obtain injunctive relief. E. g., Yale Elec. Corp. v. Robertson, 26 F.2d 972 (2 Cir. 1928); Standard Oil Co. of New Mexico, Inc. v. Standard Oil Co. of Cal., 56 F.2d 973 (10 Cir. 1932); Tiffany.& Co. v. Tiffany Productions, 147 Misc. 679, 264 N.Y.S. 459, aff'd, 237 App.Div. 801, 260 N.Y.S. 821 (1932), aff'd, 262 N.Y. 482, 188 N.E. 30 (1933); Time, Inc. v. Viobin Corp., 40 F. Supp. 249 (E.D.Ill.1941), aff'd 128 F.2d 860 (7 Cir.), cert. denied, 317 U.S. 673, 63 S.Ct. 78, 87 L.Ed. 540 (1942). As we have indicated above, the touchstone is whether confusion is likely to occur. The district court found confusion to be present in the minds of some people. From this fact it was reasonable to conclude that confusion would continue and probably would increase. Moreover, one adjunct of the plaintiff's business is in the same field as that of the defendant's main business—real estate transactions, with particular regard to the erection of shopping centers. Even if direct competition in this field is not likely, confusion is indeed probable.

■■■ To the extent that the term "Safeway" is descriptive instead of fanciful, however, the defendant is still entitled to use the term in good faith as a description of its business or services. The plaintiff may only restrain the trademark use of the term by the defendant, that is, the use of the term as a symbol to attract public attention. See Spicer v. W. H. Bull Medicine Co., 49 F.2d 980, 18 CCPA 1402 (1931); Philad Co. v. Murray's Beauty Salon, 14 F.Supp. 626, 630–631 (S.D.Ohio 1935), appeal dismissed, 96 F.2d 1019 (6 Cir. 1938); Skinner v. Martin, 109 U.S.P.Q. 156 (Cal.Super. 1956). But, as the term is here used by this defendant in its corporate name, we conclude that such use is a trademark use. See 3 Callman, Unfair Competition and Trade-Marks 1669 (2d ed. 1950). Therefore, the plaintiff is entitled to equitable relief against the defendant's present use of the term "Safeway."

■■■ Finally, the defendant contends that, regardless of the ultimate outcome of this litigation, the plaintiff

is not entitled to a preliminary injunction. The granting of a preliminary injunction pending final hearing is within the sound discretion of the trial court, and such an order will be reversed on appeal only upon a showing of abuse of that discretion or a violation of some rule of equity. Alabama v. United States, 279 U.S. 229, 49 S.Ct. 266, 73 L.Ed. 675 (1929); Prendergast v. New York Tel. Co., 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853 (1923); Pratt v. Stout, 85 F.2d 172, 176 (8 Cir. 1936). It appears to us that there is little genuine controversy as to the basic facts and that the actual dispute centers around the conclusory fact of confusion and the legal principles here involved. Accordingly, the rights of the parties were well enough established by the affidavits and pleadings for the trial court in its discretion to issue the preliminary injunction. Furthermore, although catastrophic harm to the plaintiff was unlikely if the preliminary injunction were denied, some harm was probable and the harm so caused was likely to be irreparable. The defendant was incorporated fourteen months before the issuance of the preliminary injunction and its use of the name "Safeway" cannot be said to be a long-standing use. Therefore, it is dubious that the grant of the injunction will harm the defendant significantly more than the denial of it would have harmed the plaintiff. There was no abuse of discretion in granting the preliminary injunction.

Judgment affirmed.

HAYS, Circuit Judge (dissenting).

A preliminary injunction is granted in order to preserve the status quo pending determination of the legal rights involved and to prevent irreparable injury to the plaintiff during that period. Societe Comptoir De L'Industrie Cotonniere, etc. v. Alexander's Department Store, 299 F.2d 33, 35 (2d Cir. 1962). Unless there is a showing that irreparable injury is at least possible, no preliminary injunction will issue. E. g., Foundry Service, Inc. v. Beneflux Corp., 206 F.2d 214 (2 Cir., 1953); American Mercury, Inc. v. Kiely, 19 F.2d 295 (2d Cir. 1927).

Even if we disregard the requirement of "irreparability," a preliminary injunction cannot be justified in the present case because there is no showing that a refusal to grant such an injunction would result in any injury whatever to the plaintiff. The parties are not in competition in the sense that any business intended for plaintiff will be diverted to defendant. There is no suggestion in the record that defendant's operations will engender any ill feeling on the part of the public against the plaintiff. The trial judge held that confusion without more would result in irreparable injury, but there is no basis in law or logic to believe that this is true. If defendant's use is to be enjoined after trial it is because, as a matter of equity, the courts will prevent unjust capitalization on another's good will, regardless of actual injury to the first user. See Lincoln Restaurant Corp. v. Wolfies Restaurant, Inc., 291 F.2d 302 (2d Cir.), cert. denied, 368 U.S. 889, 82 S.Ct. 143, 7 L.Ed.2d 88 (1961); Yale Elec. Corp. v. Robertson, 26 F.2d 972 (2d Cir. 1928). While an injunction may eventually be granted if confusion is established, there is no ground for the issuance of a preliminary injunction.