**ABERCROMBIE & FITCH CO., Plaintiff,**

v.

**HUNTING WORLD, INCORPORATED,
Defendant.**

**No. 70 Civ. 377.**

United States District Court,
S. D. New York.

April 23, 1971.

Sandoe, Hopgood & Calimafde, New York City, for plaintiff; Roy C. Hopgood, New York City, of counsel.

Sulzberger, Wels & Marcus, New York City for defendant; Richard H. Wels, New York City, of counsel.

LASKER, District Judge.

Defendant, Hunting World, Inc., moves for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure seeking a determination that it has not infringed plaintiff's trademark rights in the word "Safari." The complaint alleges infringements under the Trade-Mark Act of 1946 (Lanham Act), 15 U.S.C.A. §§ 1051–1127, and Article 24 of the General Business Law of New York, McKinney's Consol.Laws, c. 20. Jurisdiction is founded on 28 U.S.C.A. § 1332(a) and 15 U.S.C.A. § 1121.

## FACTS

Plaintiff is a New York corporation which since 1904 has specialized in the sale of high quality sporting goods designed to appeal to the more affluent purchaser.

As early as 1919, a trademark in the words "Safari Mills" had been granted to a certain Robert A. Suffern to be used in connection with cotton goods. This trademark was renewed in 1939 and thereafter assigned to Abercrombie & Fitch; it was again renewed by Abercrombie in 1959. The plaintiff began using the word "Safari" in connection with men's and women's outer garments in 1936, and registered a trademark using the word "Safari" for that type of clothing in 1938.

In 1957 "Safari" was registered as plaintiff's trademark for shirts, shoes, belts, fishing vests, wading jackets and swim suits. Between 1957 and 1968 the trademark "Safari" was registered as to further products: woven cloth sporting goods apparel, hats, luggage, a portable grill, insulated ice chests, camping tents, axes, and smoking pipe tobacco. Finally, in 1964, under New York law, plaintiff also registered the trademark "Safari" for luggage, sporting goods apparel (including shoes and hats), camping and outdoor equipment.

Abercrombie has advertised its products using the "Safari" trademark in its catalogues, of which some 400,000 have been distributed over the past eight years, and in newspapers in New York, Chicago, San Francisco and other cities where plaintiff maintains stores. Since 1936 plaintiff asserts that it has retailed some $19,000,000 worth of goods with the "Safari" label. Plaintiff does not state how much of its advertising has been devoted to promoting the "Safari" label. It claims that it has policed its rights to the trademark "Safari" in exchanges of letters or Patent Office proceedings in some 56 instances since 1950, the bulk occurring in the 1960's.

Defendant is a New York corporation which began its business in New York

City in 1965 as an outgrowth of Lee Expeditions, Ltd., an organizer of safaris and expeditions in Africa, Asia and India. Lee Expeditions continues to seek products in those areas for distribution through Hunting World. All of Hunting World's merchandise is related to safaris and hunting, either for use in such activity or designed to evoke the spirit of such activity, as, for example, in pictures and art work of wildlife and hunting, hunt trophies, or exotic products such as elephant skin clothing products.

Hunting World markets an ankle-high boot called a chukka, advertised as "The Safari Chukka" with such puffing in the ads as "Safari Shoes from Safariland! —Made in Kenya by Kenya's finest boot-makers—Authenticity." Defendant also markets hats for use on actual safaris and distributes a model with the brim cut down called a "Minisafari" which it had advertised in the New York press with the Code "TM" displayed, indicating its intent to protect the name with trademark registration.

Hunting World describes a section of its New York City store as "Safariland." This is also the title of a New York corporation, Safariland, Ltd., owned by the President of Hunting World, Robert M. Lee. "Safariland" has been used with the code "TM" but appears not to be a registered trademark up to now. *Safariland News* is the name of a newsletter issued at irregular intervals over the past eleven years by Lee Expeditions and by Hunting World. Defendant also sells some luggage made of elephant leather and zebra skin, and has marketed clothing designed for use on a safari described as "Kalahari" (after the African desert) or as "Safari clothes from Safari Country."

The parties here agree that "[t]he word 'safari' is a word found in Swahili and Arabic languages, which, since prior to 1892, has been adopted into the English language, and is commonly used and understood to mean and refer to a journey, or expedition, especially for hunting or exploring in East Africa, and to the hunters, guides, men, animals, and equipment forming such an expedition." (Defendant's General Rule 9(g) Statement, paragraph 3; "Admitted" in Plaintiff's Rule 9(g) Statement).

## CONTENTIONS OF THE PARTIES AND ISSUES TO BE DETERMINED

The complaint alleges that defendant's use of the word "Safari" alone or in combination with other words ("Minisafari" or "Safariland") infringes plaintiff's trademark. It presses the usual arguments in a case of this type that (a) the public is confused into believing that defendant's products are those of the plaintiff, (b) defendant's activities have injured plaintiff's reputation and good will, (c) defendant's use of the word derogates the value of plaintiff's trademark, and (d) destroys the natural extension by plaintiff of its use of the word "Safari." Plaintiff further claims that defendant has, in its application for trademark registrations, misrepresented the origins of the terms "Minisafari" and "Safariland" and as to defendant's right to use them exclusively.

In addition to denying these allegations, defendant asserts several defenses and counterclaims. It argues (a) that "safari" is a descriptive word not subject to exclusive trademark use and that defendant has used it only in a descriptive manner; (b) that defendant's use of the word in coined expressions ("Minisafari" and "Safariland") is entitled to protection because of their novelty and distinction; (c) that since "safari" is a common word as to which plaintiff has developed no secondary meaning, the plaintiff has misrepresented the facts in registering its trademark; (d) that plaintiff is guilty of laches in bringing this suit; and (e) that plaintiff has assigned its rights to the trademark and therefore lacks standing to sue.

As indicated in the footnote [1], we find no merit in defendant's contentions of misrepresentation by plaintiff or of laches or lack of standing to sue. We proceed, therefore, to the residual but key issues, which are:

(1) May the word "Safari" alone be validly registered as a trademark?

(2) If so, may summary judgment be granted as to any of the defendant's uses of the word "Safari"?

(1) *Can there be a trademark in the word "Safari"?*

Defendant argues that a "common, ordinary, descriptive word [as 'safari' is] may not be appropriated through the device of a trademark registration, and others thereby prevented from making use of it." (Memorandum of Law in Support of Defendant's Motion at 3). These contentions, however, are an oversimplification of the law.

We start from the proposition, acknowledged by the parties, that the word "safari" has entered widely into the common vocabulary of English-speaking peoples. Its general meaning is set forth above, and this meaning is substantially

---

1. (A) *Misrepresentation*

Defendant alleges that plaintiff misrepresented to the Patent Office that it had the sole and exclusive use of the word "Safari," and thus obtained its trademark by fraud. *Au contraire* plaintiff asserts that defendant, in claiming trademark on coined words including the word "safari", is guilty of misrepresenting its exclusive right to the word so coined.

However, neither party presents any evidence beyond these characterizations of the claims of its adversary; nor has either party indicated that it could do so. In fine, it appears that neither claim is supported by the facts, and accordingly summary judgment is granted on this issue to each of the parties against the other.

Both plaintiff and defendant have made honest claims and their contentions are substantial. The word "Safari" had been registered as plaintiff's trademark and plaintiff properly sought the sole right to use the word in a trademark sense as to its products. Defendant, also properly, sought to use a dictionary word in a descriptive sense closely related to, if not synonymous with, the theme of its entire business. For its coined expressions it properly sought the exclusive right to use them in a trademark sense.

The Patent Office has issued trademarks for "Safari" to numerous persons for different products. Clearly the Patent Office by its own deeds does not assign "Safari" to any one person for all purposes, and when the word is assigned for a specific product its use is exclusive so long as it validly indicates origin.

(B) *Laches*

The evidence of record does not demonstrate that plaintiff has been guilty of laches. Over the past decade plaintiff has policed its rights in "Safari" and se-cured voluntary cessation of allegedly conflicting uses of the word from nearly three score of stores and manufacturers. (Affidavit of Henry C. Geis, sworn to June 5, 1970, at 10–12). It is further established that plaintiff first discovered the alleged infringements of defendant in February of 1969 and that correspondence was begun with defendants to seek voluntary cessation of the alleged infringements. Suit was initiated in early 1970. In the light of plaintiff's expanded use of the trademark and its concern for protecting the mark over the past few years, the mere allegation in Paragraph 17 of defendant's answer, not argued here by defendant despite defendant's motion for summary judgment, is insufficient to support the defense.

(C) *Standing to sue*

Defendant raises the standing issue on the basis of the fact that the Patent Office records indicate that plaintiff assigned the trademark "Safari" to Swaniebraii, Inc. However, assignment agreement dated January 9, 1964, recorded with the Patent Office February 6, 1964, makes it clear that the assignment covered only grills and recipe books, and not hats or shoes (which are the specific infringements pointed to here) nor any other of the numerous products for which plaintiff holds trademark registrations.

The Certificates of Registration are "prima facie evidence of * * * registrant's ownership in the mark * * *", 15 U.S.C.A. § 1057(b), and the burden is on the party contesting such ownership to prove that it does not exist. Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp., 259 F.2d 314 (2d Cir. 1958). As a matter of law, on the record before us we find that defendant has not met its burden of showing plaintiff's lack of ownership.

correct according to lexicographers.[2] It is used in a variety of descriptive senses related to its basic meaning. Cf. the use of the word in United States ex rel. Bennett v. Rundle, 419 F.2d 599 (3d Cir. 1969).

■ It is, of course, true that "[d]escriptive words receive less protection under the law of trademarks than fanciful or coined words because words in our general vocabulary which all can use to describe products or services should not be unduly limited." Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 498 (2d Cir. 1962). Nonetheless, descriptive words indicative of origin may be registered as trademarks.[3] As was concisely stated in W. E. Bassett Co. v. Revlon, Inc., 354 F.2d 868, 871 (2d Cir. 1966):

"The purpose of the trademark laws is to protect the public from the confusion and deception which flows from the copying of marks which, through their distinctiveness or exclusivity of use, identify the origin of the marked products. Marks descriptive of a product seldom perform this function. Moreover, since there are only so many words that can accurately describe a type of product, the law does not favor trademark monopolization of such descriptive terms. See 15 U.S.C. § 1052 (e). Consequently, a mark that is merely descriptive of a class of products will receive no protection against infringement *unless it has acquired 'secondary meaning,'* i. e., unless the 'primary significance of the term in the minds of the consuming public is not the product but the producer.' Kel-

logg Co. v. National Biscuit Co., 305 U.S. 111, 118, [59 S.Ct. 109, 113, 83 L.Ed. 73] * * *. See Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 (2 Cir. 1962)." (Emphasis added.)

■ Although "safari" is a generic word, a genuine issue of fact exists as to whether the plaintiff has created a secondary meaning in its use of the word "identifying the source" and showing that "purchasers are moved to buy it because of its source," Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 697 (2d Cir. 1961); see also American Lead Pencil Co. v. L. Gottlieb & Sons, 181 F. 178, 181 (2d Cir. 1910, Judge Learned Hand). Plaintiff is entitled to establish in the discovery process or on trial its contention that a secondary meaning has been created. Accordingly, summary judgment cannot be granted on this issue.[4]

*(2) May summary judgment be granted on any of defendant's uses of "Safari"?*

Even though plaintiff has registered "Safari" as a mark for the products in issue here[5] and the question of secondary meaning remains undecided, "[t]he registering of a proper noun as a trademark does not withdraw it from the language, nor reduce it to the exclusive possession of the registrant which may be jealously guarding it against any and all use by others." Societe Comptoir De L'Indus., etc. v. Alexander's Department Stores, Inc., 299 F.2d 33, 36 (2d Cir. 1962). This Circuit has adopted the observations set forth in 3 Callman, Unfair

---

2. See Oxford Universal Dictionary, Random House Dictionary, and Webster's Third International (Merriam-Webster) Dictionary.

3. Indeed, the Patent Office has issued a number of trademark registrations for the use of the word "Safari" in connection with a series of other products: soap, perfume, fur, skins, hides, pelts, camp beds, house trailers, fountain pens, and flashlights. (See affidavit of Richard H. Wels, sworn to March 30, 1970, and exhibits attached being registration forms

for such trademarks). These are held by persons other than the parties here.

4. Plaintiff has contended that under 15 U.S.C.A. § 1052(f) its previous five years of use is prima facie evidence of the emergence of a secondary meaning. The statutory provision states, however, that "[t]he Commissioner may accept" this meaning, not that either the Commissioner or this court must do so.

5. See Paragraph 6 of the Complaint.

Competition and Trademarks § 69 (2d Ed.):

> "'In essence, the distinctiveness and popularity of the trade-mark will determine its relative strength or weakness and will accordingly define the scope of protection to be accorded the mark against the confusing similarity of others. * * * If the mark is weak, its protection may have an "extremely narrow scope"; and may indeed be limited to similar goods similarly marketed. Only the strong mark will be protected against infringements arising out of its use in connection with noncompeting goods.'" Westward Coach Manufacturing Co. v. Ford Motor Co., 388 F.2d 627, 634 (7th Cir. 1968).

The specific infringements complained of by plaintiff consist of "the retail marketing of sporting apparel including hats and shoes identified SAFARI, alone or in an expression dominated by SAFARI, namely, MINISAFARI and SAFARI-LAND." (Paragraph 10 of Complaint). (Although the complaint speaks of goods described by the word "Safari" as "including" hats and shoes, no other goods have been identified in this category.) The general description of defendant's business and defendant's advertising employs the motif of the safari and of African and Asian expeditions. Insofar as this general description is alleged to be an infringement because it relates to retail marketing, it is discussed with each of the specific infringements identified below.

### (a) *General description*

■ If plaintiff's attack on "the retail marketing of sporting apparel" by the defendant (Paragraph 10 of Complaint) is intended to suggest that defendant has no right to use the word "Safari" in connection with the description of its business, plaintiff's contention is untenable. We have already noted that the word "Safari," even when usable as a trademark, is a weak mark. However, here defendant's right to use the word "Safari" in connection with the description of its business—as distinguished from the sale of products, which we treat below—is based not only on the weakness of the mark, but, more importantly, on the fact that defendant uses the word descriptively rather than as a trademark. Hunting World, Inc., grew from the operation of a company which actually organizes safaris and has common officers with that company. Defendant's business activity centers on the specific outfitting of safaris, as well as the sale of products with the exotic appeal of the safari. We have here one of the not infrequent cases in which two parties may share between them the various uses of a single word. As stated by the Court of Appeals of this Circuit in King-Seeley Thermos Co. v. Aladdin Industries, Inc., 418 F.2d 31, 35 (1969):

> "A case like this involves * * * the need for drawing the line between two kinds of right-doing, King-Seeley's legitimate interest in protecting its trademark insofar as this is valid and Alladin's equally legitimate interest in being free to sell its products by use of a generic term, and their opposites, attempts by King-Seeley to extend its trademark beyond its legal bounds and efforts by Aladdin to encroach upon the protected area." [6]

### (b) *Hats*

■ Defendant sells two hats marked with the word "Safari." The first is a

---

6. Defendant has also used the phrase "Safari Clothes from Safari Country." This use is not specifically complained of, although Paragraph 6 of the Complaint sets forth plaintiff's ownership of Registration No. 703,279 of 8/23/60 for "Woven cloth sporting goods apparel." Whether plaintiff can establish a secondary meaning in its application of "Safari" to such apparel remains to be seen. On further proceedings in this case, plaintiff must be specific as to what uses are alleged to infringe. Defendant indicates that its use of the phrase "Safari Clothes from Safari Country" is purely descriptive and refers to "Kalahari clothing manufactured in Africa for use on safaris." Whether this is so must be determined at trial.

broad-rimmed hat with a wide band, easily recognized as the classical safari hat. On its inner band appears the profile of the head of a Greek warrior and the brand name "Dorian" in large block letters. Beneath the brand name, in smaller block letters, appears the word "Safari." This use, and the advertising of "The Hat For Safari," is purely descriptive and can no more offend any possible trademark of plaintiff than would the use of the word "fedora" to describe that type of hat. The facts here are strikingly similar to those in Feathercombs, Inc. v. Solo Products Corp., 306 F.2d 251, 254 (2d Cir. 1962). There the court observed:

"The court below found, and properly so, that this word ['Featherlight'] was merely used to describe the qualities of Solo's hair roller, and was not used in a trademark sense. That is, the word 'Featherlight' was not meant to convey to the public the fact that the product was manufactured by a particular company and was not indicative of source. A mere examination of Solo's advertising in the period between 1938 and 1957 bolsters this conclusion, for the words 'Solo' in block letters was given great prominence in the display of the hair roller, while the word 'Featherlight' was depicted in much smaller block lettering."

The only hat as to which plaintiff uses "Safari" as a mark is a "swordfisherman's cap," but this fanciful use of the word by the plaintiff for a completely different product is not infringed by defendant's purely descriptive use. See Safeway Stores, Inc. v. Safeway Properties, Inc., supra, 307 F.2d at 499:

"To the extent that the term 'Safeway' is descriptive instead of fanciful, * * *, the defendant is still entitled to use the term in good faith as a description of its business or services. The plaintiff may only restrain the trademark use of the term by the defendant, that is, the use of the term as a symbol to attract public attention." (Citing cases.)

The second hat alleged to infringe is defendant's so-called "Minisafari" hat, a hat in the same style as the genuine safari hat, with the brim trimmed back. The use of "safari" here as part of a novel coined expression is not an infringement of any possible trademark of the plaintiff for several reasons: (1) it is fresh and original in its creation; (2) it is literally descriptive of the product to which it attaches, a little safari hat; (3) it is a product sufficiently different from plaintiff's swordfisherman's cap to avoid the possibility of confusion; (4) in any event, it is sufficiently distinct from the use of "safari" alone not to connote the same origin. See Sears, Roebuck & Co. v. Haymer, 263 F.2d 348, 46 CCPA 783 (1959); American Tobacco Co. v. Polacsek, 170 F. 117 (C.C.S.D.N.Y.1905).

### (c) "Safariland"

The coined word "Safariland" is described by the President of defendant as follows: "It connotes a location, that is, a shop or a portion of a shop, a SAFARILAND boutique or a portion of a shop, and it also is the name of a New York corporation called Safariland, Ltd. * * * [which is] involved in the wholesale distribution of products imported by Lee Expeditions, Ltd." (Deposition of Robert M. Lee, May 25, 1970, at 12). The word is also used in the name of "Safariland News" which Lee Expeditions and Hunting World issue irregularly as a newsletter.

As is the case with "Minisafari," the use of "safari" as part of this original coined expression is not an infringement. (1) "Safariland" does not relate to any specific product in competition between the parties; (2) it is sufficiently unique and distinct so that confusion is unlikely; (3) it is used in a descriptive sense arising out of defendant's actual involvement in conducting or outfitting safaris and in capitalizing on the exotic appeal of the safari; (4) plaintiff's rights in "safari", assuming arguendo secondary meaning may be shown, are rights in a weak mark, and "[i]f the

mark is weak, its protection may have an 'extremely narrow scope'; and may indeed be limited to similar goods similarly marketed." Westward Coach Manufacturing Co. v. Ford Motor Co., supra, 388 F.2d at 634.

In sum, defendant is entitled to use the word "Safari" to describe those of its products which relate to the practice or cult of safari. If gathering these into a part of its store and calling it "Safariland" is defendant's trade practice, it does not thereby infringe plaintiff's use of "Safari." Defendant is entitled to register its coined expression "Safariland" but, of course, whether that mark is valid or not will turn on whether it indicates origin.

### (d) *Shoes*

■  Both parties sell shoes using the mark "Safari." In this case the word is used by both parties in a fanciful rather than a purely descriptive sense. None of the shoes appears to be designed for actual use on a safari, although some of defendant's shoes may be made in Africa of African materials. Because "Safari" is used in a fanciful sense suggestive of origin, the possibility of infringement arises.[7]

Since a genuine issue of fact exists as to whether plaintiff has created a secondary meaning in the word "Safari" as applied to its shoes, no summary judgment can be granted on this issue.

### CONCLUSION

The motion for summary judgment is denied except to the extent of holding that defendant's use of the word "Safari" in connection with the general description of its business and its present uses of the word "Safari" to describe its safari hat, "Minisafari" to describe its smaller safari hat, and "Safariland" do not infringe such rights as plaintiff may have in the use of the word "Safari." Finally, each party is entitled to summary judgment against the other on its respective claim of misrepresentation.[8]

Submit order on notice.

---

7. The shoes as to which plaintiff has registered the trademark "Safari" include the "Safari Oxford" (a cotton cover shoe) and the "Safari Kahn Oxford" (leather topped). Defendant retails as "Safari Shoes from Safariland" a "Safari Chukka" (a boot-like shoe of leather), a "Hippo Safari" (a shoe of hippopotamus suede), and a "Camel Safari Chukka" (a boot-like camel hide shoe). Defendant's use of the word "Safari" as to shoes is not purely descriptive, and if plaintiff establishes a secondary meaning as to shoes it is entitled to relief.

8. Where there remain no genuine issues as to material facts in a suit for trademark infringement, summary judgment is appropriate. Alladin Plastics, Inc. v. Jerrold Stephan Co., 362 F.2d 532, at 534 (9th Cir. 1966), there construing Rule 56(e) F.R.Civ.P. Plaintiff's reliance on Marcus Breier Sons, Inc. v.

Marvlo Fabrics, Inc., 173 F.2d 29 (2d Cir. 1949), does not compel a contrary conclusion. Also, unlike Sanitized, Inc. v. S. C. Johnson & Sons, Inc., 23 F.R.D. 230 (S.D.N.Y.1959), or Sterling Products Corp. v. Sterling Products, Inc., 45 F.Supp. 960 (S.D.N.Y.1942), the moving papers here are adequate to provide the factual basis for the determinations made. Recently this Circuit, in Venetiannaire Corp. of America v. A & P. Import Co., 429 F.2d 1079 (2d Cir. 1970), affirmed "the granting of summary judgment on the trademark infringement claim." In accord are Spencer v. VDO Instruments, Ltd., 232 F. Supp. 735 (D.C.Mich.1964), aff'd 352 F.2d 784 (6th Cir. 1965); Blanchard Importing & Distributing Co. v. Societe E. Blancard et Fils, 402 F.2d 797 (Ct. of Customs & Pat. Appeals, 1968); Beef/Eater Restaurants' Inc. v. James Burrough Ltd., 398 F.2d 37 (5th Cir. 1968).